It is further ordered that the succession of decedent pay the costs of this appeal.

(136 So. 67)

Succession of WEBRE.

No. 31236.

June 22, 1931.

Harold A. Moise, of New Orleans, for appellant.

Normann, McMahon & Breckwoldt, of New Orleans, for appellee.

OVERTON, J.

George L. Webre died at Meridian, in the state of Mississippi, on January 25, 1931, and was buried in New Orleans, three days later. He died intestate, leaving no ascendants nor descendants, though left a widow, Mrs. Edna Norman Webre, and two sisters, one of whom is Mrs. Edna Webre Harrison, and the other, Mrs. Lolly Webre Heinz. He also left a niece, Eldah Webre Kalotta, the daughter of William W. Webre, deceased.

Webre's property consisted of movables, both corporeal and incorporeal, largely the latter, and is such as would likely be considered, under the laws of this state, as the separate property of the deceased.

A month after the death of Webre, one of his sisters, Mrs. Edna Webre Harrison, opened his succession in the city of New Orleans, by applying for the taking of an inventory and for appointment as administratrix. The widow of Webre opposed this application on the ground that the domicile of the deceased, at the time of his death, was Meridian, Miss.; that his estate consists entirely of movable property; and that he left no debts, for which his succession is liable, in this state. It is therefore urged that the courts of this state are without jurisdiction to entertain the application of Mrs. Harrison. The trial court ruled that it was without jurisdiction to entertain the application, and dismissed it.

The question presented is one of more than usual importance to the parties interested, because, in this instance, if the property, left by Webre, was, under the laws of this state, his separate property, and not the property of the community of acquets and gains, it passed to his sisters and niece, whereas, under the laws of Mississippi, where the community does not exist, it passed, at the moment of death, to the widow. As to whether the civil district court for the parish of Orleans had jurisdiction over Mrs. Harrison's application depends upon whether or not Webre was domiciled in the parish of Orleans at the time of his death.

Webre was born in Thibodaux, La., where his parents resided. Early in life he moved to New Orleans, and later obtained employment in the Grunewald Hotel, now the Roosevelt, where he worked for many years. For some years he was manager of the Roosevelt Hotel, but finally lost his position with it, and later secured a position with the Jung Hotel, in New Orleans, as manager, which he shortly thereafter lost on account of his addiction to the use of alcoholic liquors. After the loss of that position, every effort was made by the deceased and his friends to obtain a position in New Orleans for him, but

without success. Finally, after efforts made, not only in New Orleans, but out of the state, a position was obtained for him in Meridian, Miss., as manager of the Lamar Hotel, which he accepted.

It is not disputed that, immediately prior to the time Webre went to Meridian to accept his position, his domicile was New Orleans, and had been during all of his business career. The burden is therefore upon the widow to show a change of domicile, for the presumption is that the domicile of choice, like the domicile of origin, remains unchanged, and the burden of proof is upon him who alleges the change. State ex rel. Fleming v. Joyce, Registrar, 123 La. 631, 49 So. 219; Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522. To establish another domicile it is necessary that the person have the intention of abandoning his domicile at the time, and of residing in the new place permanently or indefinitely, coupled with actual residence there. The fact that he may entertain a floating intention to return at some future period is immaterial. Story on Conflict of Laws (7th Ed.) par. 46, p. 41; Succession of Steers, 47 La. Ann. 1551, 18 So. 503; Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360.

We shall now consider whether Webre changed his domicile from New Orleans to Meridian. Before moving to Meridian he went there to look into the situation, and to make the necessary arrangements, looking towards his removal. Apparently finding, under the circumstances, everything satisfactory, including his employment there, he moved to Meridian, taking with him what corporeal property he had, and also his wife, and located in quarters in the hotel, provided by it, under its contract with him, which is usual. The deceased opened a bank account in Meridian, and to all appearances became a resident of Meridian. He declared his intention to the members of the board of directors of the hotel to reside in Meridian permanently, and evinced his desire, so soon as financial conditions would permit, to acquire stock in the hotel. In his conversations with a number of his acquaintances he expressed himself in such manner as to convey the impression that he had located in Meridian permanently. On the other hand, in letters written to his sisters, and to two or three others, who were close to him, he expressed himself as dissatisfied with his position and with Meridian, and cautioned the recipients against mentioning the fact. There is some parol evidence to the same effect. There is also evidence to the effect that the day before Webre died, which was about sixty days after he moved to Meridian, that he sent his wife to New Orleans, with a letter, in another effort to obtain a position there for him. This evidence, however, is flatly contradicted by the wife, and in the light of the surrounding circumstances, we are unable to say that the fact sought to be elicited by it has been established.

We do not attach to the statements, found in the letters of Webre, the importance that counsel for Mrs. Harrison attaches to them. The deceased had spent practically all of his business life in New Orleans. His friends and associates were there. He had not left New Orleans for social reasons. He had not had time to form new associations in Meridian, when the letters were written. It was perfectly natural for him to have a desire to return to New Orleans, and for him to miss his associations there. We feel, however, that no one knew better than Webre that New Orleans was no longer the place for him to reside; that all of his life he had worked in connection with hotels, and had

risen to, and long held, the responsible position of a hotel manager, and was familiar with no other line of business; that it was known among hotel men, in New Orleans, why he had lost his position in the Jung hotel, and that, as experience had taught him, he could not hope to obtain a position there at all commensurate with his ability and training, and that the proper step for him to take was to abandon his domicile there, seek a new location, resist his desire for intoxicants, and, in the new location, establish a domicile. These things he did during the short space of life left him. The trial judge so thought, and we do not feel justified, on the record before us, in disturbing his opinion.

The judgment is affirmed.