CULPEPPER, Judge.
This is a wrongful death action. The plaintiff is Dominic S. Dupre who filed this suit individually, as the “widow” (she later conceded there was no formal marriage but contends there was a common-law marriage in Mississippi, Texas or Oklahoma) of Murphy Dupre, Jr., and in her capacity as tutrix of her minor child, Donald Ray Dupre. Plaintiff contends that her common-law husband, Murphy Dupre, Jr., was killed when a cable on the boom of a crane broke and dropped heavy equipment on him.
The defendants, Rochester Ropes, Inc. and Delta Ropes and Swings, Inc., are the manufacturers of the cable. They filed a motion for summary judgment, contending that the pleadings, affidavits, etc. show there is no genuine issue of material fact and that under the laws of Mississippi, Texas and Oklahoma there was no common law marriage between plaintiff and the decedent. Hence, that both her claim and that of her illegitimate child must be rejected. The trial judge sustained the motion for summary judgment. Plaintiff appealed.
The substantial issue is whether there are genuine issues of material fact necessary to decide whether plaintiff was the common-law wife of the decedent under the laws of Texas. For, if there was such a common-law marriage it must be recognized in these proceedings, Chivers v. Couch Motor Lines, Inc., La.App., 159 So.2d 544 and the authorities cited therein, and plaintiff and her child have a cause of action under the wrongful death provisions of LSA-C.C. Art. 2315.
One of the documents considered on the motion for summary judgment is an opposing affidavit filed by plaintiff, in which she states:
“ ‘That in May, 1957, she began living with Murphy Dupre in Alexandria, Louisiana. She continued to live in Louisiana with Murphy Dupre until they moved to Waynesboro, Mississippi in 1960. It was her intention to make Waynesboro, Mississippi her home and to live there permanently, if possible. During the time they were living at their home in Mississippi, they lived together as husband and wife, there was no impediment to their marriage in that both of them were single at the time and had had *591 no previous spouses. At the time they were living at “their home in Mississippi they continued to live together as man and wife under an agreement that they were man and wife, and were known publicly as man and wife and consequently were married under the “common law” of the state of Mississippi.
“ ‘Likewise, they lived together as man and wife in the State of Oklahoma and in the State of Texas and the facts and circumstances of their living together there were such as to constitute a common law marriage under the law of these states.
“ ‘That from the time she began living with Murphy Dupre until the time of his death, they were never separated except on short intervals when he was out of town on jobs. They filed joint income tax returns as man and wife and claimed the children as exemptions.
“ ‘In every manner and respect they lived together as man and wife in the states of Louisiana, Mississippi, Oklahoma and Texas.
“ ‘Donald Ray Dupre was born after their common law marriage in the state of Mississippi.’ ”
Plaintiff’s deposition, which was attached to defendants’ motion for summary judgment, gives more details as to the circumstances under which the plaintiff and decedent lived together. This deposition shows they originally became acquainted in 1957 when she was working as a waitress, and he as a car salesman, in Alexandria, Louisiana. Beginning in about May of 1957 in Alexandria, Louisiana, they have lived together as man and wife ever since and have had two children. In about 1960 Mr. Du-pre started working for G.S.I., a concern which did survey work in several states. When he went to work in Waynesboro, Mississippi, they lived together there from July of 1961 until March of 1962 and then returned to Louisiana. In about 1964, they moved to Oklahoma where they lived together for about six weeks. They also lived together in Texas. With particular reference to the time they lived in Texas, the deposition reads as follows:
“Q Now as I understand what you have told us here today, you first met Mr. Dupre some time during the early part of 1957, and along in May of that year you all started living together, and remained in Louisiana until you went to Waynesboro, Mississippi, in either July, ’61 or ’62.
“A Yes.
“Q And you remained over there until March of the following year — whatever year it was you went over there. Is that correct?
“A Yes.
“Q And then from there you went to Oklahoma, and from Oklahoma to Texas, and from Texas back to Louisiana.
“A Yes. Well we was really planning on staying in Texas is what we really was planning on doing. It was a lot more industry, and you could make a better living there, and he said if they laid him off there he would go to work in a place making more money than really what he was making with G.S.I. They were suppose to train him to be a surveyor with G.S.I., and he learned enough about it that he could go mostly to any oil field work in Texas and make a better living.
“Q But you did come back to Louisiana, and that’s when he went to work with this construction company.
“A Well he had a chance to either go to work for them or either G.S.I. back then, making more money. They was in Texas at the time.
“Q But actually he did actually come back here and go to work for a construction company.
“A Yes, he did.”
*592 After the hearing on the motion for summary judgment, the trial judge called a conference with both counsel and pointed out to them that common-law marriages were declared illegal in the State of Mississippi in 1956. In view of this development, the court allowed counsel an additional delay within which to file any further supporting or opposing affidavits or documents but none were filed. Hence, the only documents to be considered, in addition to the pleadings, are the deposition and the opposing affidavit given by plaintiff herself.
Pretermitting the question of whether there was a valid common-law marriage in Mississippi or Oklahoma, we think there is a genuine issue of material fact relevant to the issue of whether there was a common-law marriage in the State of Texas. In his written opinion the district judge quotes from the case of Kelly v. Consolidated Underwriters, Tex.Civ.App., 300 S.W. 981; Tex.Com.App., 15 S.W.2d 229, the applicable Texas law on the subject of common-law marriages as follows:
“ ‘From the quotations of * * * the case (Kelly v. Consolidated Underwriters) it appears to be the view of the court that “where the contract of marriage is invalid under the law in the state in which it is made, the status of the parties thereafter will be regarded as being meretricious and that that status will follow them during any stay in Texas, unless there is a new agreement of the marriage made in Texas, followed by cohabitation and a public holding-out, or unless they become domiciled in Texas. If the parties become domiciled in Texas, then in that event there is not necessity to prove a new agreement of marriage in Texas, but instead consent to a new marriage within that state will be inferred by reason of the original intent to marry if there be cohabitation in Texas and a public holding-out by the parties that they are husband and wife. In short, domicile is an aid but not a prerequisite to sustain the claim of common law marriage in Texas where the original contract of marriage was invalid.’ ”
The district judge found, under the facts set forth in the documents considered, that the parties were never domiciled in the State of Texas and hence it was necessary to prove a new agreement of marriage in Texas. Since no such new agreement was shown by the documents in question, the trial court ruled there was no common-law marriage in Texas.
We find we are unable to agree with the trial court’s conclusions. First of all, we think there is a genuine issue of fact as to whether the parties were domiciled in Texas. In Zinco v. Zinco, 204 La. 478, 15 So.2d 859 (1943), our Supreme Court said:
“ ‘If there be a bona fide intent to establish a domicile, and a bona fide residence of some sort, “it is immaterial whether he lived in a hired house, a boarding house or (hotel), or his own dwelling.” * * * The domicile is then “fixed,” even as soon as such residence has begun or lasted “even for a few days” only.’ Brewster v. Emlet, 168 La. 326, 122 So. 54, 55. ‘To establish another domicile it is necessary that the person have the intention of abandoning his domicile at the time, and of residing in the new place permanently or indefinitely, coupled with actual residence there.’ Succession of Webre, 172 La. 1104, 136 So. 67. A change of domicile may be undertaken by a man whenever he so desires ; any restraint upon his choice would be an abridgment of his right. ‘The law seeks for the intention, and allows every citizen freely to select his domicile accordingly, as his interest, inclination, or even caprice, may direct.’ Hennen v. Hennen, 12 La. 190.”
In the above quotation from her deposition, plaintiff states that when they *593 went to Texas they planned to stay there because there was a lot more industry and they thought he could earn a better living. This is at least sufficient to raise an issue as to whether the parties intended to establish a domicile in Texas. Under Texas law, as quoted from the Kelly case above, if they were domiciled in Texas, it was not necessary to show an express agreement of marriage in Texas. Mere cohabitation in Texas and a “public holding-out” by the parties that they were husband and wife is sufficient. In her opposing affidavit quoted above, plaintiff states they lived together as man and wife in Texas. This is sufficient to raise a genuine issue of fact as to whether there was an “inferred” agreement of marriage in Texas.
LSA-C.C.P. Art. 966 provides for summary judgment where “the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” In the recent case of Roy & Roy v. Riddle, 187 So.2d 492 (La.App., 3d Cir. 1966) we construed these statutory provisions as follows:
“The courts have noted repeatedly that the summary judgment remedy is not a substitute for a trial and may not be resorted to when there is a genuine issue of material fact which must be resolved. In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issués raised, but rather only to determine whether or not there is a genuine issue of material fact. To obtain a summary judgment it is not sufficient to prove that it is unlikely that the plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. The burden of showing that there is not a material factual issue is upon the mover for summary judgment. All doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts.”
Counsel for the plaintiff has correctly pointed out that even if the facts shown by the documents are sufficient to show these parties were not domiciled in Texas, the documents do not negate a new agreement of marriage in Texas. This question is not answered in either the deposition or the affidavit. The burden is upon the mover for summary judgment to show all facts necessary. Hence, the burden was on the defendant to negate a new agreement of marriage in Texas. It was not necessary for the plaintiff to introduce additional affidavits to show that there was such a new agreement.
It is our conclusion that there are genuine issues of material fact. The motion for summary judgment must be denied and the case remanded for trial.
After the present matter was decided by the district judge, the United States Supreme Court decided in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, that LSA-C.C. Art. 2315 is unconstitutional insofar as it denies to illegitimate children the right to recover under its wrongful death provisions. Of course, counsel for plaintiff argues on appeal in this court that under the Levy case the illegitimate child is entitled to recover, regardless of whether there was a common-law marriage. We will pretermit any discussion of the Levy case. Since we have decided to remand the case to the district court for trial on the merits, these matters can be considered by the trial judge.
For the reasons assigned, the judgment appealed is reversed and set aside. This case is remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendant.
Reversed and remanded.