217 So.2d 779 (1969)
Succession of Amelia Robin Von Hofe BARGER.
No. 3293.
Court of Appeal of Louisiana, Fourth Circuit.
January 6, 1969.
*780 Simon & Simon, Warren M. Simon, Jr., New Orleans, for plaintiff-appellant.
Arthur V. Flotte and Thomas J. Taylor, New Orleans, for defendant-appellee.
Before SAMUEL, CHASEZ and HALL, JJ.
HALL, Judge.
Mrs. Amelia Robin Von Hofe Barger died, testate, at Metairie Hospital in Jefferson Parish on February 1, 1968. Her succession was opened in the Civil District Court for the Parish of Orleans on February 14, 1968 on the petition of Kermit Frymire, who was named Testamentary Executor in decedent's will. The will and the codicil thereto was probated on February 15, 1968 and Kermit Frymire was confirmed and qualified as Testamentary Executor. On March 5, 1968 orders were signed directing the taking of inventories in Orleans, Jefferson and Ascension Parishes.
On April 3, 1968 Russell A. Thompson, a particular legatee under the terms of decedent's will, filed a petition alleging that decedent was domiciled in Ascension Parish at the time of her death and therefore the Civil District Court for the Parish of Orleans was without jurisdiction ratione materiae to administer the succession. An order was issued directing Kermit Frymire to show cause why the succession proceedings should not be dismissed and why all judgments and orders therein should not be declared null and void.
Trial of the rule resulted in a judgment dismissing the petition and rule to show cause and the petitioner, Russell A. Thompson appealed suspensively therefrom.
The decedent, Amelia Robin Von Hofe Barger, was married in the City of New Orleans to Harold D. Barger, a resident of the State of Ohio, on February 26, 1924. They lived together as man and wife in the State of Ohio until they were divorced on October 8, 1958. Following the divorce Mrs. Barger moved to Donaldsonville, Ascension Parish, Louisiana on February 3, 1959. She bought a home in Donaldsonville and it is undisputed that she lived and maintained her domicile in Ascension Parish from February 3, 1959 at least until January 4, 1967.
The sole issue in this matter is whether or not decedent changed her domicile sometime *781 after January 4, 1967 and was domiciled in the Parish of Orleans at the time of her death on February 1, 1968.
The record reveals that Mrs. Barger left her home in Donaldsonville and came to visit Mrs. Fred Jacobi at her home in New Orleans on January 4, 1967. She stayed with Mrs. Jacobi until May 16, 1967 when she moved to Manhattan Manor, a nursing home in Jefferson Parish. She remained as a patient in the nursing home until two days before her death when she was removed to a hospital in Jefferson Parish where she died. While she was in the nursing home she spent pracically every week end from Thursday afternoon to Sunday night or Monday evening at Mrs. Jacobi's home. From January 4, 1967 until the date of her death Mrs. Barger returned to Donaldsonville on only two occasions, once in June 1967 and again in December 1967. On each occasion she was driven there by a friend, Mrs. Carolyn George, and stayed in Donaldsonville only a few hours.
Mrs. Jacobi makes it plain in her testimony that when Mrs. Barger came to New Orleans on January 4, 1967 she came to visit her as her guest. They had been raised together and were life long friends. Mrs. Barger had visited her on other occasions. On this occasion Mrs. Barger was suffering from poor circulation in her legs and other ailments and it was difficult for her to tend to herself without help. Mrs. Jacobi testified that she administered to Mrs. Barger's needs and took care of her in anything that she had to do. Both ladies were approximately seventy-five years of age at the time and Mrs. Jacobi stated that it "got to be a little bit more than I cared to handle" and that "I felt like breaking it up." Mrs. Jacobi further testified that Mrs. Barger asked several times if she could stay permanently. On these occasions she told Mrs. Barger that it was more than she could undertake. Mrs. Jacobi testified this is what prompted Mrs. Barger to seek a nursing home so that she could be taken care of. Mrs. Jacobi stated that "the idea was" that Mrs. Barger would spend part of the time at the nursing home and that she would keep her the rest of the time. She emphasized that she didn't want to keep Mrs. Barger out of her home and that Mrs. Barger could visit in her home whenever she wished.
The record reflects that the reason Mrs. Barger did not return to her home was because she could not obtain adequate help in Donaldsonville.
Mrs. Barger never removed any of her effects to New Orleans. When she left Donaldsonville she left all of the utilities connected. On the occasion of her visit to Donaldsonville in June 1967 to see about the family burial plot (where she was subsequently buried) she did not have the utilities disconnected. She did however have the electric, gas, and telephone service disconnected on her trip to Donaldsonville on December 18, 1967 but left the water service on with instructions to Mr. Nolan Cocke, who was looking after her residence, to let the water run in freezing weather. Mrs. George who drove her to Donaldsonville on this occasion testified with regard to the utilities: "We kept telling her `why let all of that run'", and this is probably why Mrs. Barger had the electric, gas and telephone service disconnected.
The deceased never sold her Donaldsonville residence and never removed any of her furniture therefrom. She made application for and received a homestead exemption thereon each year from 1963 through 1968, the year of her death. She never changed her voting registration and was registered to vote in Donaldsonville at the time of her death. She maintained an active bank account in Donaldsonville to the time of her death. The last deposit was credited to her account on the date of her death and the last check was deposited on February 6, 1968, five days after her death. There is no evidence that any funds were ever transferred to New Orleans or that she ever had a bank account *782 in New Orleans. There was a balance of $6,852.20 in the Donaldsonville account when it was closed after her death. Her monthly bank statements were always mailed to her Donaldsonville address.
Mrs. Barger's application for admission to Manhattan Manor dated May 6, 1967 gave her address as 616 Mississippi Street, Donaldsonville, Louisiana, and this address was never changed on the records of the nursing home. Her application for "Extended Care" under the Medicare Program dated in October 1967 likewise carried the same address.
Mrs. Barger's Federal income tax returns for the years 1964, 1965 and 1966 carried her address as 616 Mississippi Street, Donaldsonville, Louisiana.
During the time Mrs. Barger was in New Orleans she was under the treatment of Dr. Arthur Bohmfalk. Dr. Bohmfalk testified that Mrs. Barger was elderly and deaf and had a circulatory problem with her legs and that she was weak and demanded a lot of attention. He stated that it was he who suggested that she go to a nursing home. He further testified that: "Mrs. Barger told me she was never going to return to Donaldsonville because she was unable to get help to take care of her. She felt that she needed somebody with her all the time."
Mr. William Riley, Administrator of Manhattan Manor, testified that in his last conversation with the deceased which occurred in January 1968 Mrs. Barger told him "She wasn't sure but she wouldn't be able to go back to Donaldsonville," because she couldn't get help there.
Mrs. Carolyn George, who drove Mrs. Barger back and forth from the nursing home to Mrs. Jacobi's residence and who drove her to Donaldsonville on the two occasions, testified that Mrs. Barger told her that she was never going back to Donaldsonvillethat she intended to stay at Mrs. Jacobi's residence. She further testified that on the occasion in December 1967 when she drove Mrs. Barger to Donaldsonville Mrs. Barger gave her all of her canned food and "a lot of her pots and pans" and opened up the ice box doors.
Mrs. Jacobi testified that Mrs. Barger felt she didn't have strength to go back to Donaldsonville to live; that "she didn't have any hopes of going."
Mr. Falvey Fox, the New Orleans attorney named in Mrs. Barger's will, testified that Mrs. Barger told him she intended to spend the rest of her life at Mrs. Jacobi's residence. He also testified that at one time Mrs. Barger had intended buying a home next door to Mrs. Jacobi but it fell through because it was too much for her to keep up.
The record further reveals that Mrs. Barger had invested in several homestead associations in New Orleans prior to her coming to New Orleans in January 1967, and that on May 11, 1967 she requested the homesteads in writing to change her address on these accounts from Donaldsonville to Mrs. Jacobi's address in New Orleans.
In December 1967 Mrs. Barger mailed a Christmas card to Mrs. Clyde St. Amant, a friend who lived in Gonzales, Louisiana, on which she wrote the following:
"Am staying at Manhattan Rest Home But I don't like it. getting help in Dville. impossible. otherwise I'd be back home. came down to spend several months with cousin decided due to condition in Dville looked for Rest Home this was the best but I'm not happy. Hope you are enjoying good health. Greetings and best wishes sincerely

Robin Barger"
As we have stated the record as a whole indicates that Mrs. Barger came to New Orleans on January 4, 1967 to visit her friend (sometimes referred to as her cousin) Mrs. Jacobi for a few months and that the only reason she did not return *783 to her home was because of her condition and the inability to secure proper help in Donaldsonville.
The burden of proof is upon the party endeavoring to avail himself of a change in decedent's domicile to produce evidence of such a nature that no reasonable doubt exists relative to the party's intention to abandon the old and create a new domicile. So long as a reasonable doubt remains the presumption is that the domicile has not been changed. Succession of Primeaux, La.App., 159 So.2d 725; Foreman v. Jordan, La.App., 131 So.2d 796; In re Adoption of Rials, 220 La. 484, 56 So.2d 844; Succession of Simmons, 109 La. 1095, 34 So. 101.
We are of the opinion from a consideration of the record as a whole that the Succession Representative has failed to sustain the burden of proving that Mrs. Barger was domiciled in New Orleans at the time of her death. She came here on a visit and the only reason she did not return to Donaldsonville was because she needed physical help which was not available there. The management of her personal affairs does not indicate that she intended to change her domicile and as late as two months prior to her death she referred to Donaldsonville as "home" in her Christmas card to Mrs. St. Amant.
The Succession Representative cites Succession of Webre, 172 La. 1104, 136 So. 67 and Succession of Rhea, 227 La. 214, 78 So.2d 838 as authority for the proposition that "where a person maintains and actually lives in only one residence that residence is his domicile." The facts in the cited cases are entirely dissimilar to the facts before us. In our opinion Mrs. Barger had no actual residence in New Orleans as the word "residence" is used in those cases. The fact that she ate and slept for a while as a guest in Mrs. Jacobi's home did not make that home her "residence" within the meaning of the law relating to domicile.
For the foregoing reasons we are of the opinion that the decedent was not domiciled in the Parish of Orleans at the time of her death. Consequently the Civil District Court for the Parish of Orleans lacked jurisdiction ratione materiae to administer her succession and all proceedings taken therein are null and void. LSA-C.C.P. Art. 2811; Succession of Guitar, La.App., 197 So.2d 921.
The judgment appealed from is reversed and it is now ordered, adjudged and decreed that the rule herein filed by Russell A. Thompson on April 3, 1968 be and the same is hereby made absolute and accordingly the entire proceeding entitled "Succession of Amelia Robin Von Hofe Barger" being No. 474-392 of the docket of the Civil District Court for the Parish of Orleans is hereby dismissed and all judgments, orders and decrees rendered therein are hereby set aside and declared null and void; costs of both Courts to be borne by defendant-appellee.
Reversed and rendered.