276 So.2d 391 (1973)
Succession of Beverly Williams McELWEE.
No. 12053.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1973.
Michael S. Ingram, Monroe, for plaintiff-appellant.
Campbell, Campbell, Marvin & Johnson, by John T. Campbell, Minden, for defendant-appellee.
*392 Before AYRES, HEARD and HALL, JJ.
HALL, Judge.
A petition to probate the will of Beverly Williams McElwee was filed in the Fourth Judicial District Court for Ouachita Parish by Paul Henry Kidd, who was alleged to be the trustee of a trust created by the will. An exception to the jurisdiction of the district court was filed by Sandra McElwee Jones, the daughter and sole heir of the decedent, on the grounds that the decedent was domiciled in Claiborne Parish and not in Ouachita Parish at the time of her death. The probate of the will was also opposed on other grounds. After a trial on the exception and opposition, the district court sustained the exception of lack of jurisdiction and dismissed the action. Petitioner perfected a devolutive appeal to this court. We affirm the decision of the district court.
LSA-Code of Civil Procedure Article 2811 provides that "A proceeding to open a succession shall be brought in the district court of the parish where the deceased was domiciled at the time of his death." LSA-Code of Civil Procedure Article 44 provides that "The venue provided in Articles ... 2811 ... may not be waived." Thus, in succession proceedings venue is jurisdictional.
The sole issue presented by this appeal is whether decedent was domiciled in Ouachita Parish at the time of her death on January 20, 1972. If not, then the district court for that parish lacked venue or jurisdiction and the petition to probate the will of the decedent was properly dismissed.
Prior to November, 1970, Mrs. McElwee resided at 308 East Street in Haynesville, Louisiana, which is located in Claiborne Parish. This residence was Mrs. McElwee's home during her entire married life and she continued to reside there after she was separated from her husband in 1966.
On November 18 or 19, 1970, Mrs. McElwee rented a furnished apartment in Monroe in Ouachita Parish and moved some of her clothes from the Haynesville residence to this apartment. She left all of her furniture and other personal belongings in the home in Haynesville and left all utilities connected in this residence which was still being occupied by her daughter and a maid, Elva Washington. The maid was hired by the decedent to live in her home in Haynesville with the decedent's daughter with an understanding that decedent would only be living in Monroe for about three to six months.
In early December, 1970, Mrs. McElwee executed and filed in Ouachita and Claiborne Parishes, declarations of intent to change her domicile from Claiborne Parish to Ouachita Parish pursuant to LSA-Civil Code Article 42.
Mrs. McElwee had been engaged in protracted litigation with her former husband. Her principal motive in setting up residence in Monroe was to be able to pursue this litigation in Ouachita Parish rather than Claiborne Parish, where she was dissatisfied with results obtained. On December 9, 1970, she filed suit for alimony in Ouachita Parish.
Mrs. McElwee spent only one or two nights a week in the apartment in Monroe between November 18, 1970, and Christmas of that year. The remainder of this time she spent in her home in Haynesville. She sought employment in Monroe but was unsuccessful. Sometime around Christmas, 1970, she returned to Haynesville and indicated to her daughter and the maid that she had returned to Claiborne Parish permanently. She moved her things out of the Monroe apartment, the rental of which expired on February 1, 1971. Thereafter, she stayed in Monroe overnight on only a few occasions and then as a guest at the home of petitioner and his wife.
From approximately Christmas, 1970, until her death on January 20, 1972, Mrs. McElwee resided at her home in Haynesville *393 in Claiborne Parish. Her actions clearly show that she considered this residence her domicile and principal establishment during this time. She resided and spent most nights there. She applied for and obtained a homestead exemption for 1971 on the residence in Haynesville. In February, 1971, Mrs. McElwee had the Ouachita National Bank in Monroe change her mailing address for her bank statements to her home address in Haynesville. Mrs. McElwee became ill in late 1971, and was hospitalized on four separate occasions before her death in January, 1972. On all four occasions she registered her home address as Haynesville on the hospital admission slips.
The district court held that the burden was on appellant to prove beyond a reasonable doubt that decedent intended to change her domicile from Claiborne to Ouachita Parish, and that the preponderance of the evidence was that decedent never intended to make her principal establishment in Ouachita Parish or to remove it from Claiborne Parish. Appellant argues that the recording of the declarations pursuant to LSA-Civil Code Article 42 is conclusive of intent, that decedent's domicile was changed in the latter part of 1970, and that the burden is on the opponent to prove a change back to Claiborne Parish.
The pertinent Articles of the LSA-Civil Code provide:
"Art. 38. The domicile of each citizen is in the parish wherein he has his principal establishment.
"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."
"Art. 41. A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there."
"Art. 42. This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.
"This declaration is made in writing, is signed by the party making it, and registered by the recorder."
A person's domicile is the parish wherein he has principal establishment, which is defined as where he makes his habitual residence. Domicile can be changed from one parish to another by actually residing in the new location coupled with an intent of making one's principal establishment there, that is, with an intent to habitually reside there, or to remain there permanently or at least indefinitely. See Successions of Rhea, 227 La. 214, 78 So.2d 838 (1955); Burgan v. Burgan, 207 La. 1057, 22 So.2d 649 (1945); Succession of Webre, 172 La. 1104, 136 So. 67 (1931); McKowen v. McGuire, 15 La.Ann. 637 (1860); Gravillon v. Richard's Executor, 13 La. 293 (1839). The filing of a declaration of intent to change domicile is not conclusive but may be contradicted by other evidence and the court will look to the real facts of the case. Successions of Rhea, supra; In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1951); Barrow v. Barrow, 160 La. 91, 106 So. 705 (1925); Wesson v. Marshall, 13 La.Ann. 436 (1858); Watson v. Simpson, 13 La.Ann. 337 (1858); Yerkes v. Broom, 10 La.Ann. 94 (1855); Judson v. Lathrop, 1 La.Ann. 78 (1846). The burden is upon the party endeavoring to avail himself of a change in domicile to prove the change beyond a reasonable doubt. In Re Adoption of Rials, supra; Succession of Simmons, 109 La. 1095, 34 So. 101 (1903); Succession of Barger, 217 So.2d 779 (La.App.4th Cir. 1969); Succession of Primeaux, 159 So.2d 725 (La.App.4th Cir. 1964).
*394 It is not necessary to decide whether Mrs. McElwee changed her domicile from Claiborne to Ouachita Parish in the latter part of 1970. The issue here is her domicile at the time of her death in January, 1972. Even if it be assumed arguendo that she changed her domicile to Ouachita Parish in 1970, the evidence shows beyond a reasonable doubt that she moved back and re-established her principal establishment and habitual residencedomicilein Claiborne Parish in about January, 1971, where it continued until the time of her death about a year later. She actually resided at her longtime home in Haynesville and the evidence is that she intended to reside there permanently or indefinitelywhich she in fact did.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.