BOLIN, Judge.
O. B. Mobley, Jr., sued Nomie M. Namie, Jr., for money Mobley alleges he loaned Namie while Namie was married to Mob-ley’s daughter. Namie excepted to the venue of the Caddo Parish court, saying he was domiciled in Bienville Parish. Evidence was taken on the exception and it was overruled. Namie answered, contending the money was not advanced as a loan but as a gift, but that if there was a debt it was owed by the marital community. Namie filed a third party demand against his divorced wife seeking a judgment against her for one-half of any amount for which he might be cast. Following trial on the merits judgment was rendered in favor of Mob-ley against Namie for the amount prayed for, and in favor of Namie on his third party demand against his former wife. Na-mie appeals from the judgment and also reurges his exception to the venue. We reverse on the merits and affirm the ruling on the exception.
ISSUES
1. Was defendant domiciled in Caddo Parish at the time the suit was filed?
2. If the first issue is answered in the affirmative, did plaintiff prove defendant was legally indebted to him?
*307 VENUE
An individual domiciled in the state shall be sued in the parish of his domicile. (La. Code of Civil Procedure Article 42).
A person’s domicile is where he has his principal domestic establishment. (La. Civil Code Article 38). In order to acquire a domicile one must reside in a location with an intent to remain there permanently or indefinitely. Succession of McElwee, 276 So.2d 391 (La.App.2d Cir., 1973) and cases cited therein.
In this case the trial judge found that Namie’s principal place of employment was in Caddo Parish; that he was renting an apartment in that parish where he stayed four or five nights each week; that he had a telephone listed in his name at the apartment; that he had his name on a mail box there. Namie testified his domicile was with his parents in Bienville Parish where he spent several nights each week. The court concluded defendant was domiciled in Caddo Parish and overruled the exception to the venue. We find sufficient evidence to support this ruling.
MERITS
Mobley’s daughter, Penelope, married Namie in 1970 and they were divorced several years later. Mobley contends that between 1970 and 1972 he advanced money to his daughter and Namie; that all the advances were loans which Namie agreed to repay. A detailed ledger, prepared and kept by Mobley’s secretary, reflected a total expenditure by him of $18,759.53 on behalf of his daughter and Namie. The principal items were: $5,000 representing a monthly allowance of $200 paid by Mobley to his daughter for 25 months; approximately $5,100 spent on two houses owned by Mob-ley at Shreveport and Ruston, but occupied by Namie and his wife; internal revenue and employment security debts owed by Namie totaling $363.65; several thousand dollars for various business ventures operated by Namie at Ruston and Monroe which were apparent failures.
Namie does not contest the correctness of the amounts shown in the ledger. His defense is that he was not legally obligated to pay the amounts. He did feel he had a moral obligation to pay if and when he became financially able. He testified he had intended to repay some, if not all, of the amounts claimed if the Mobleys had not broken up his marriage.
While much can be said to justify or condemn the actions of both Namie and the Mobleys, that is not a function of the court. Whether the transactions between the parties created a legal debt owed by Namie to Mobley may be largely determined from two handwritten letters. On June 19, 1972, Namie wrote Mobley a letter seeking to justify some of his past conduct and blaming his marital problems on interference from Mrs. Mobley. In this letter he said, “Believe it or not, you have not been alone in giving me support, but you will be alone in the fact that I will repay you every cent with interest.”
On June 25, Mobley answered Namie’s letter expressing disappointment over Na-mie’s apparent misunderstanding and lack of appreciation of what he and his wife had done for the young couple. In this letter he said, “Do you understand the money spent by us was an investment in your family future. Remember I said Nomie, don’t start sending us money—keep it—when you get on your feet, then, if you would feel better paying us some along as you can afford it—do it. The statement showing what we have spent was sent at your request. This account has been kept at your request and you do not owe us one penny because we did this as an investment in your family future.” Mobley explains his letter by saying it was written during a time when he was greatly, disturbed and that he never intended to tell Namie he was not legally obligated to pay him.
The trial judge found the overall testimony, when studied in connection with the letters, showed the money was advanced as a loan. We do not agree with this conclusion. Unfortunately this court cannot erase *308 the strained feeling between the Mobleys and Namie. Our task is one of deciding the legal issues. The letter written by Mobley makes it clear that he never advanced any money to Namie as a loan. In fact, some of the money was advanced without Namie’s knowledge. Undoubtedly the Mobleys were very interested in the welfare of their daughter, and by advancing the money they had reason to believe the marriage would succeed and that their daughter and grandchild would benefit.
Assuming, but not deciding, that Namie’s' letter of June 19 created an enforceable debt as of that date by unconditionally promising to pay the amount reflected on the ledger, we find Mobley’s letter of June 25 constituted a voluntary remission of the debt. In this letter he expressly stated defendant did not owe him one penny. Louisiana Civil Code Articles 2130, 2199 and 2201.
The judgment is reversed and plaintiff’s demands are rejected at his cost.