490 So.2d 630 (1986)
SUCCESSION Of Annie Louise Lachle BARNES.
No. 17838-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*631 Tucker, Jeter & Jackson by James C. McMichael, Jr., Shreveport, for appellants, Commercial National Bank in Shreveport and John L. Boggs, Jr.
Pugh & Pugh by Robert G. Pugh and Robert G. Pugh, Jr., Shreveport, for appellees, E. Lee Barnes and Charles O. Hardey.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
MARVIN, Judge.
Four descendants of a pre-deceased adopted daughter of the decedent, Annie Lachle Barnes, appeal that part of a judgment rejecting their demands for a declaration that Mrs. Barnes was a domiciliary of Shreveport, Louisiana, at the time of her death on June 4, 1979, and that her estate should be administered according to Louisiana law.
Domicile is critical to the ultimate claims of plaintiffs that sizeable movable assets elsewhere of the estate of Ms. Barnes, as well as immovable property here, are subject to the Louisiana law of forced heirship and that inter vivos cash gifts made by Ms. Barnes to her other descendants are subject to collation under Louisiana law. Ms. Barnes died testate. Her will excluded the plaintiff descendants and named only her husband and her other descendants as legatees.
Domicile is an issue of fact to be determined on a case by case inquiry. CC Art. 43, Slocum v. Dewitt, 374 So.2d 755 (La.App. 3d Cir.1979), writ refused. Our factual review of the record leads us to conclude that the trial court was not clearly wrong in its determination that the decedent was a domiciliary of Texas and not of Louisiana at her death. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, we affirm the judgment.

FACTS
Mrs. Barnes was first married to the late B.A. Hardey and accompanied him on many trips from Shreveport, where they lived, to Colorado during the 1930's, `40's and `50's. Mrs. Barnes moved to Colorado several months before she married E. Lee Barnes in Boulder, Col., in 1961. She and Mr. Barnes were first domiciled in Colorado. Mrs. Barnes and the Hardey Trust (a Colorado *632 entity) purchased a resort home in Arizona in 1962. Her original household furnishings remained in the Colorado home which was occupied by her and her husband. Because of her declining health and Mr. Barnes' business interests in Shreveport, Mrs. Barnes and the Hardey Trust jointly purchased a home on Chamberlain Street in Shreveport into which she and Mr. Barnes moved in 1963. Mrs. Barnes brought some of her personal belongings from Colorado to the Shreveport home but the bulk of her original furnishings remained in Colorado.
In 1965 Mrs. Barnes sold her interest in the Colorado home and moved her household furnishings from Colorado to the Arizona home. Mrs. Barnes and the Hardey Trust jointly purchased a home on Cross Lake in Shreveport in 1967 and then sold the Chamberlain street home.

MOTIVE FOR THE CHANGE
In 1973 Mrs. Barnes bought for herself and with her separate funds a residence in Jefferson, Texas, on Lake o' the Pines. By 1973, plaintiffs contend, Mrs. Barnes desired to exclude the four plaintiff descendants from her will and to leave her entire estate to her other descendants and to her husband. Before purchasing her Texas home and when informed of the Louisiana law of forced heirship, Mrs. Barnes consulted about her desire with her son, C.O. Hardey, a Louisiana lawyer, who referred her to a Texas lawyer. Mrs. Barnes sought specific advice about becoming a domiciliary of Texas in order to dispose of her estate as she desired. Plaintiffs contend that Mrs. Barnes' motive was to evade or avoid the Louisiana law of forced heirship and that her attempts thereafter to "change" her domicile from Shreveport to Texas were nothing more than a sham and should fail.
We hold that the reason or the motive for changing one's domicile is immaterial. The factual determination of establishment or of change of domicile derives from intent. The motive for a change of domicile in this appeal, when clearly revealed, actually strengthens rather than weakens, in our opinion, the other factual circumstances from which intent is determined. See CC Art. 41; Successions of Rhea, 227 La 214, 78 So.2d 838 (1955).

1973-1979 CIRCUMSTANCES
In 1974 Mrs. Barnes and the Hardey Trust jointly purchased a town house in Shreveport. Upon purchasing for herself the Lake o' the Pines home in 1973, Mrs. Barnes moved her original furnishings from the Arizona resort home into the Lake o' the Pines home. The Shreveport town house, purchased in 1974 by Mrs. Barnes and the Hardey Trust, was furnished with the furnishings from the Shreveport Cross Lake home which was later sold in 1976. Mrs. Barnes had personal belongings both in the Lake o' the Pines home and in the Shreveport townhouse.
Plaintiffs contend that Mrs. Barnes was domiciled in the Shreveport townhouse at the time of her death. Admittedly, she wholly owned the Texas home and only partly owned the Shreveport townhouse when she died. Residence and domicile are related terms, but legally are not synonymous. A person may have several residences, but only one domicile. LaFleur v. Seaboard Fire and Marine Insurance Co., 296 So.2d 860 (La.App. 3d Cir.1974), writ refused; Harrison v. Commission Council of Bogalusa, 169 So.2d 159 (La.App. 1st Cir.1964). A change of domicile can be accomplished by residing in another place with the intention of making that place one's domicile. CC Art. 41, Rhea, supra. Compare CC Art. 38.
For several years before Mrs. Barnes' death, Mr. Barnes had both of Shreveport's daily newspapers delivered to the Shreveport townhouse and received his business mail in Shreveport. They purchased an automobile in Shreveport before Mrs. Barnes' death and regularly purchased groceries here. The automobile was titled and licensed, however, in Texas, and sales and use taxes were paid to Texas and not to *633 Louisiana. They spent more time in Shreveport during the last year of Mrs. Barnes' life than in the Texas home because her treating physicians were here and Mrs. Barnes needed their regular attention. Compare Succession of Barger, 217 So.2d 779 (La.App. 4th Cir.1969), writ refused.
During Mrs. Barnes' final days she would awake from her comatose state and declare to nurses and visitors present that she wanted to be taken "home to Texas" because she wanted to die there. Before her final days, when frequently with friends in Shreveport some 35 miles distant from Jefferson, Texas, she referred to her home as being on the Lake o' the Pines, in Jefferson, Texas. She bought other lots or property around her Jefferson home after 1973, which she explained was for "protection." She and her husband listed Texas as their domicile or home address on tax returns since 1974. Before 1973 they filed resident tax returns in Louisiana. After 1973 they filed nonresident tax returns in Louisiana. She signed a homestead exemption in Texas and not in Louisiana. She and her husband were continually registered to vote in Texas since 1973 and not in Louisiana. In 1974 Mr. Barnes was subpoenaed for jury duty in Texas. Mr. and Mrs. Barnes had many contacts with Shreveport and their friends here. At times, however, they or she entertained these friends at their Jefferson home. Mrs. Barnes' succession was opened in Texas. Ancillary proceedings were opened here. Her will, made in Texas in 1973, and two codicils made in 1974 and 1976, contained her sworn declaration that she was then a domiciliary of Texas.
It is true that before 1973, Mrs. Barnes was domiciled in Shreveport and that the legal presumption is against a change in domicile. The burden is on him or her who asserts a change in domicile to overcome the presumption by facts that prove the existence of the intent to establish a new domicile. Messer v. London, 438 So.2d 546 (La.1983); Barger, supra; In re Kennedy, 357 So.2d 905 (La.App. 2d Cir.1978).
Plaintiffs argue that despite her Texas lawyer's advice about leaving Louisiana to accomplish a change of domicile to Texas, Mrs. Barnes, after 1973, continued to live in Louisiana as she had before. This record shows that after 1973, Mrs. Barnes did not, however, live in, or as a domiciliary of, Louisiana, as she had before 1973, even though she purchased part interest in a Shreveport townhouse in 1974 and for a few days a week "resided," "lived," or "stayed" there. Her primary place of living, her "home" as she declared it after 1973 and her intended place of domicile after 1973, was in Texas.
The trial court concluded the presumption against a change in domicile was "far outweighed by the evidence," and that Mrs. Barnes was not domiciled in Louisiana, but in Texas, at the time of her death. Total abandonment of her Shreveport connections was not necessary to accomplish a change of her domicile under the described circumstances. The burden of overcoming the presumption was met by defendants. Succession of Caprito, 468 So.2d 561 (La. 1985), cert. denied.
The record supports the trial court's conclusion. At appellant's cost, the judgment is affirmed.