296 So.2d 860 (1974)
Charles LaFLEUR, Plaintiff-Appellee,
v.
SEABOARD FIRE & MARINE INSURANCE CO., Defendant-Appellant.
No. 4526.
Court of Appeal of Louisiana, Third Circuit.
June 13, 1974.
Rehearing Denied July 15, 1974.
Writ Refused September 20, 1974.
*861 Raymond M. Allen and Paul J. Breaux, Lafayette, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Charles LaFleur against Seaboard Fire & Marine Insurance Company, the insurer of plaintiff's employer. An interlocutory judgment was rendered by the trial court overruling an exception of venue filed by defendant. The case was then tried on its merits, and on October 16, 1973, a separate judgment was rendered by the trial court in favor of plaintiff, awarding him compensation at the rate of $49.00 per week for 100 weeks, plus penalties and attorney's fees.
Defendant appealed, and plaintiff answered the appeal praying that the judgment be amended to award him compensation at the same rate for 500 weeks, and to increase the amount allowed as attorney's fees.
One question presented is whether this suit was instituted in the proper venue. If the venue is found to be proper, then additional issues are presented as to the nature and extent of plaintiff's injury and as to the award of penalties and attorney's fees made by the trial court.
Plaintiff LaFleur sustained an injury to his right eye on December 11, 1972, during the course of his employment as a laborer for Dealer's Truck and Equipment Company, Inc. While he was using an electric drill, the bit in that tool broke causing the drill to move suddenly and to strike plaintiff's eye. The injury consisted of a sclera laceration of the eye, about 10 millimeters in length. Plaintiff received medical treatment promptly, the treatment consisting, in part, of surgery for the repair of the laceration, hospitalization for approximately 10 days, and out patient treatment for about six months.
Defendant, as the insurer of plaintiff's employer, paid workmen's compensation benefits to plaintiff at the rate of $49.00 per week from the date of the accident until June 18, 1973, the payments amounting to the aggregate sum of $1,323.00. Defendant also paid all medical expenses incurred up to June 25, 1973, for the treatment of plaintiff's injury, amounting to $1,125.54.
The accident occurred at the place of business of plaintiff's employer, Dealer's Truck and Equipment Company, in East Baton Rouge Parish. That employer is a Louisiana Corporation, and although it maintained a place of business in East Baton Rouge Parish, its domicile is in Shreveport, Caddo Parish, Louisiana. The accident thus did not occur in Evangeline Parish, and the domicile of plaintiff's employer is not in Evangeline Parish.
LaFleur filed a suit initially on March 7, 1973, in the Nineteenth Judicial District Court, East Baton Rouge Parish, for the workmen's compensation benefits alleged to be due him as a result of the above described accident and injury. The defendants *862 in that suit were Dealer's Truck and Equipment Company, and its insurer, Seaboard Fire & Marine Insurance Company. Judgment was rendered in that suit on April 5, 1973, sustaining an exception of prematurity filed by the defendants, and dismissing the suit as of non-suit. No appeal was taken, and that judgment has become final.
The instant suit was instituted on August 8, 1973, in the Thirteenth Judicial District Court, for Evangeline Parish. The sole defendant in this suit is the employer's insurer, Seaboard Fire & Marine Insurance Company. That defendant filed a declinatory exception, alleging that plaintiff's domicile is in East Baton Rouge Parish, that his domicile is not in Evangeline Parish, and that this suit thus was brought in an improper venue. The trial judge rendered judgment overruling that exception. Defendant contends on this appeal that the trial court erred in holding that Evangeline Parish is the proper venue for this suit.

Exception of Venue
LSA-R.S. 23:1313, relating to the venue of compensation suits, provides in part that:
"Suits in which the insurer is a defendant which arise out of accidents that happen in the State of Louisiana may be filed at the domicile of the employer or in the parish where the accident occurred or at the domicile of the plaintiff whether such plaintiff be the employee or his dependents, and at no other place, whether the action is direct against the insurer alone, or whether the employer is joined therein." (Emphasis added).
Plaintiff concedes that the accident did not occur in Evangeline Parish, and that the domicile of his employer is not in that parish. He contends, however, that his domicile is in Evangeline Parish, and that that parish is a proper venue for this suit. Defendant alleges and contends that plaintiff has changed his domicile from Evangeline to East Baton Rouge Parish, and that this suit thus was not brought in a proper venue.
Plaintiff was 23 years of age and was unmarried when the accident occurred. He was born and raised in Ville Platte, Evangeline Parish, and his parents still live there. Upon graduation from high school in that city in 1967, he went to a trade school for one year in Opelousas, St. Landry Parish, and then worked in New Orleans for about two months and in Texas for one month. He returned to Evangeline Parish where he lived with his parents and worked for about two years. He moved to Baton Rouge in August, 1972, and he has shared a rented apartment with a friend in Baton Rouge since that time. He explained that he moved to Baton Rouge because he lost his job in Ville Platte, and could find no other employment there. After he moved to Baton Rouge, he obtained employment for short periods of time at two separate business establishments, and then he worked for Dealer's Truck and Equipment Company from sometime in September, 1972, until the above mentioned accident occurred, about three months later. He did not work from the date of his injury, December 11, 1972, until May 29, 1973, but during that time he continued to reside in his apartment in Baton Rouge. Since the last mentioned date, he has worked for Young Manufacturers, in Baton Rouge, and he has continued to reside in that city.
Plaintiff has kept his clothes and other personal belongings in his apartment in Baton Rouge since August, 1972. He lists Baton Rouge as his address on his driver's license. His income tax forms and his salary checks are mailed to him there, and he has become a member of a labor union in Baton Rouge. In the first workmen's compensation suit which he filed in March 1973, he alleged that he was "a resident of the full age of majority of the Parish of East Baton Rouge of the State of Louisiana." Defendant feels that the above facts establish *863 that plaintiff's domicile has been changed to East Baton Rouge Parish.
The evidence shows, on the other hand, that plaintiff is registered to vote in Evangeline Parish, and that he has voted in every election held there since he became a registered voter, except perhaps one or two bond elections. He testified that he spends most weekends and holidays in Evangeline Parish, he maintains a bank account in Ville Platte, buys most of his clothes there, bought his car and obtained his automobile insurance in that city, and that he has never intended to change his domicile from that parish. Some of the above testimony by plaintiff is weakened by other evidence which tends to show that the automobile which plaintiff uses actually was purchased in the name of his father less than a month before this suit was filed. It also shows that the insurance on that automobile is in his father's name, the bank account which plaintiff maintains in Ville Platte is a savings account, and that he maintains another such account in Baton Rouge.
A person's domicile is in the parish wherein he has his principal establishment, that being the parish in which he makes his habitual residence. LSA-C.C. art. 38. His domicile may be changed from one parish to another by his action in moving to and actually residing in the new location, coupled with an intent on his part of making his principal establishment there, with an intent to habitually reside there, or with an intent to remain there permanently or at least indefinitely. Succession of McElwee, 276 So.2d 391 (La.App. 2 Cir. 1973).
The terms "domicile" and "residence" are not synonymous, although they are closely related. A person may have only one domicile, while at the same time maintaining two or more residences. Harrison v. Commission Council of Bogalusa, 169 So.2d 159 (La.App. 1 Cir. 1964); Manuel v. American Employers Insurance Co., 228 So.2d 321 (La.App. 3 Cir. 1969).
Everyone has a domicile of origin which he retains until he acquires another. Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522 (1922); Rappeport v. Patten, 3 So.2d 909 (La.App. 2 Cir. 1941). One who asserts that there has been a change of domicile has the burden of proving that change. Cannon v. Cannon, 242 So.2d 291 (La.App. 4 Cir. 1970). So long as a reasonable doubt remains, however, the presumption is that the previously established domicile of the person, or his domicile of origin, has not been changed. Succession of Barger, 217 So.2d 779 (La. App. 4 Cir. 1969).
The evidence in the instant suit establishes that plaintiff LaFleur's domicile of origin was in Evangeline Parish. Defendant asserts that his domicile has been changed to East Baton Rouge Parish. A presumption exists that there has been no change of domicile, and the burden of showing that a change of domicile has been made rests upon defendant.
We find that defendant has not established by a preponderance of the evidence that there has been a change of plaintiff's domicile. There is no error in the judgment of the trial court, therefore, which overrules defendant's exception of venue, and holds in effect that Evangeline Parish is the proper venue for this suit.

On the Merits
The only medical evidence in the record is the testimony of Dr. Charles Afeman, an expert in the field of ophthalmology, who treated plaintiff for his eye injury. He testified that LaFleur was disabled from the date of the injury, December 11, 1972, until June 8, 1973, but that since the last mentioned date he has had no disability and has been "capable of doing whatever was required of him."
The evidence shows that although plaintiff has not been disabled since the last mentioned date, he does have a permanent impairment of the sight of his right eye. *864 Dr. Afeman testified that plaintiff has 20/20 vision in his left eye, and that he has 20/30 vision in his injured right eye, although the vision in his right eye can be corrected to 20/25 by the use of glasses. Dr. Afeman estimates that without corrective lenses plaintiff has lost approximately 20 percent of the vision of his right eye. With correction, the doctor feels he has lost from 5 to 8 percent of his vision in that eye.
Plaintiff testified that he usually experiences headaches and an irritation in his right eye a couple of hours after he returns from work. He stated that he cannot judge things as easily as he could before he sustained the injury, and that his right eye cannot take the light like a normal eye. Dr. Afeman testified that plaintiff's complaints cannot be explained or justified on a medical basis. We think some of plaintiff's complaints are attributable to the kind of work he performed after the eye injury was sustained. He testified that his work for Young Manufacturers as a "fitter's helper" since May 29, 1973, has required him to do a great deal more welding than he did when he was working as a laborer for Dealer's before the accident. He explained that in his former employment he would sometimes go for a week without doing any welding, but that in his present job he welds just about every day. He stated that it is a common occurrence for the eyes of welders to become "real red" and "get irritated" from the type work they do, and that their eyes usually "water a little bit" from the welding.
We believe, as the trial judge apparently did, that the discomfort which plaintiff may suffer now does not disable him from performing the type of work he has performed heretofore. We think his complaints were considered in the estimate made by the treating physician that plaintiff has sustained a 20 percent loss of function of the eye as a result of the accident. We find, therefore, that plaintiff has sustained a 20 percent partial loss of the use or function of his eye, but that that condition is not disabling, and that he is entitled to workmen's compensation benefits under the provisions of LSA-R.S. 23:1221(4)(o).
Our conclusion is that plaintiff is entitled to 20 percent of 65 percent of his weekly wages for a period of 100 weeks. The evidence establishes that he was earning $100.00 per week at the time of the accident. According to our computations, he is entitled to recover compensation at the rate of $13.00 per week, which amounts to the total sum of $1,300.00.[1] He has been paid $1,323.00 as compensation, and thus the amount paid has fully compensated him for his injury. LSA-R.S. 23:1221(4)(i)(o); Allen v. Insurance Company of North America, 216 So.2d 400 (La.App. 4 Cir. 1968); Cain v. St. Paul Fire and Marine Insurance Co., 201 So.2d 286 (La.App. 3 Cir. 1967); Thompson v. Cloud, 166 So.2d 28 (La.App. 3 Cir. 1964).
In view of the fact that plaintiff has received all of the workmen's compensation benefits to which he is entitled, the trial court erred in awarding additional benefits and penalties and attorney's fees.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiff, rejecting plaintiff's demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.
NOTES
[1] The minimum compensation benefits payable at the time of the accident were $12.50 per week. See LSA-R.S. 23:1202, as amended by Act 25 of the Extra Session of 1968.