318 So.2d 917 (1975)
Louis CHARBONNET, III
v.
James J. HAYES, Respondent-Contestee, and
Orleans Parish Democratic Executive Committee Nominal-Respondent.
No. 7297.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 1975.
Writ Refused September 10, 1975.
*918 Robert J. Ziblich, New Orleans, for Louis Charbonnet, III, contestant-appellee.
Ronald J. Rakosky, New Orleans, for James J. Hayes, and others, respondents-contestees.
Peter J. Castano, Associate Trial Counsel, New Orleans, for petitioner-contestant.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT and BEER, JJ.
BOUTALL, Judge.
Louis Charbonnet, III, as an elector and a candidate for the office of Representative from the Ninety-Sixth Legislative District of Louisiana, brought suit under *919 LSA-R.S. 18:396 objecting to the candidacy of James J. Hayes for that office, contending that Hayes was not qualified to be a candidate because he was not actually domiciled in Legislative District 96 for the full year preceding the time of qualification. After trial, the District Court found that Hayes "was not actually domiciled for the preceding year in Legislative District Ninety-Six" and rendered judgment in the contestant's favor, enjoining the Orleans Parish Democratic Executive Committee from certifying Hayes as a candidate. Hayes appeals. We affirm.
The controlling principle of law is that set out in Louisiana Constitution of 1974, Article III, § 4(A), as follows:
"Section 4. (A) Age; Residence; Domicile. An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the proceeding[1] year in the legislative district from which he seeks election is eligible for membership in the legislature."
The Louisiana Civil Code furnishes the following definition of domicile:
"Art. 38. The domicile of each citizen is in the parish wherein he has his principal establishment.
"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."
Our courts have frequently interpreted the meaning of the word "domicile". We refer to a number of cases in which the "domicile" or "principal establishment" has been jurisprudentially restated to be "the principal domestic establishment". Zinko v. Zinko, 204 La. 478, 15 So.2d 859 (1943); Mosely v. Dabezies, 142 La. 256, 76 So. 705 (1917); Hyman, Lichtenstein & Co. v. Schlenker & Hirsch, 44 La.Ann. 108, 10 So. 623 (1892); Succession of Franklin, 7 La.Ann. 395 (1852). This is based upon where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and the comforts of domestic life. In establishing domicile, intent is based on actual state of facts and not what one declares them to be. Successions of Rhea, 227 La. 214, 78 So.2d 838 (1955).
We also note a number of cases involving candidates for election. However, most of these cases involve requirements of "residence" not "domicile". We refer to the case of Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921) involving an interpretation of the phrase "actual bona fide resident". See also Melerine v. Democratic Parish Executive Committee, 164 La. 855, 114 So. 711 (1927). We also refer to the case of Brown v. Democratic Committee, Court of Appeal, Fourth Circuit, 238 So.2d 48 (La.App. 4th Cir. 1970) wherein we considered only residence.
We relate the above because the new Constitution of 1974 in Article III, § 4(A) sets out for the first time a requirement of being "actually domiciled" in the legislative district. In the previous constitutional provision, Art. 3, § 9 of the Constitution of 1921, the requirement was that a representative candidate be an "actual resident". See Stavis v. Engler, 202 So.2d 672 (La.App.1967) and McIntire v. Carpenter, 202 So.2d 297 (La.App.1967).
The substitution of the word "domiciled" for "resident" effects a considerable change in the requirements of candidacy. Additionally, we do not consider the inclusion of the word "actually" to be a mere surplusage or a redundacy because *920 some act of residing has always been required for establishment of domicile. We consider that the framers of our present constitution intended to ensure that a candidate seeking to represent the people of a district does truly live amongst those people and does not simply establish a domicile by declaration of intentions accompanied by some minimum acts of residence. As we see it, the constitution requires adherence to the factual concept of habitual residence and principal establishment, and, where a person resides alternately in several places, he is only qualified for election purposes in that place where he maintains bona fide living quarters in which he actually lives a substantial part of the time. It emphasizes the facts of living in a place, rather than simply maintaining a bedroom elsewhere which one may occasionally retire to. The determination of actual domicile is dependent on the facts in each particular case. The burden of proof is upon the contestant.
With these principles before us, we proceed to a consideration of the facts herein.
The pertinent period with which we are vitally concerned is the year precedent to August 4, 1975. The contestant concedes that Hayes actually resided in the 96th District until August, 1973. Prior to this time, Hayes, who is a 40 year old bachelor, had an apartment on Ursulines Street, but he testified that he lived with his mother nearby on N. Robertson Street. Both premises are within the District. In August, 1973 Hayes gave up his apartment on Ursulines and moved into an apartment at Smith Hall, 2101 Louisiana Avenue, on August 15, 1973. This apartment house is outside the 96th District. Hayes entered into successive leases on this apartment, the last from May, 1974 to May, 1975. This lease was cancelled by agreement on September 30, 1974 because Hayes, in his capacity as organizer for the Southern Region of the National Tenants Organization, went to Alabama to help organize a group there from October 12, 1974 to the weekend preceding Mardi Gras, Feb. 11, 1975. Thus we are primarily concerned with the narrow issue of whether the actual domicile of Hayes during the period August 5, 1974, to the first part of October, 1974, was at his mother's apartment on N. Robertson St. or his apartment on Louisiana Ave.
We believe a fair evaluation of the evidence leads to a preponderance establishing the actual domicile on Louisiana Avenue. Although Hayes testified that he always lived mainly at his mother's, he could not or would not attempt to say what the extent of his living there amounted to. His mother and a neighbor, Mrs. Queen, gave testimony that he lived there most of the time. Unfortunately they failed to reckon with Hayes' admitted absence from the State of Louisiana from October, 1974 to Mardi Gras weekend, 1975, and testified Hayes was there daily, Mrs. Queen for the entire period and Mrs. Hayes for approximately half. There were a number of conflicts in the testimony of these ladies with other testimony such that the trial judge could have made a credibility decision and disbelieved all of their testimony.
However we place more importance on the credibility of Hayes testimony. His testimony is to the effect that although he leased the Louisiana Avenue apartment from August 15, 1973 to September 30, 1974, he seldom used it, but held it for the convenience of friends, most from out of town, who might call upon him for a place to staythis, at a monthly rental of $151.00 on an income of an estimated $1400.00 during the entire time of rental.
Our reading of the record is that the trial judge made a credibility evaluation of the testimony of Hayes, his mother and Mrs. Queen, and gave little weight to their testimony. We accept this credibility call.
At the same time, the record shows sufficient evidence to support the trial judge's finding and preponderates in favor *921 of a Louisiana Avenue domicile. The testimony of the building superintendent, Oliver B. Thompson, Assistant Administrator of Flint-Goodrich Hospital, is to the effect that Hayes actually lived in that apartment. He received his mail there and had his telephone there. Eric Coleman testified that Hayes did not live at his mother's house but lived elsewhere. The testimony of Peter Castano, although suspect standing alone, nevertheless corroborates the testimony of these witnesses.
We believe the evidence on the whole shows that Hayes used his mother's address simply as a matter of convenience and to maintain a "political domicile" while he was "actually domiciled" on Louisiana Avenue in August and September, 1974. We find no error in the decision of the trial court.
The judgment appealed from is affirmed at appellant's costs.
Affirmed.
REDMANN, LEMMON and GULOTTA, JJ., dissent.
MORIAL, J., recused.
REDMANN, Judge (dissenting).
Domicile is not a new word coined by the Louisiana Constitutional Convention of 1973. Domicile does require intention and factthe animus manendi et revertendi, and physical presence as well. The intention seems overwhelmingly established, by documents from an unsuspicious time. The physical presence is sharply limited by the residence at the Louisiana avenue apartment and the several-months trip to Alabama, but it was not shown to be non-existent.
The judgment should be reversed.
LEMMON, Judge (dissenting).
I agree with the majority's analysis of the controlling law. I disagree, however, that the use of the words "actually domiciled" in La.Const., 1974, Art. 3, § 4(A) was intended to change existing jurisprudence. Previous decisions have rejected attempts at qualifying for office by "simply maintaining a bedroom elsewhere to which one may occasionally retire." See, for example, McIntire v. Carpenter, 202 So.2d 297 (La.App. 4th Cir. 1967).
The apparent purpose of residency requirements in the qualifications for a representative office is to insure that the person elected has sufficient contacts with the election district so as to be an effective spokesman for that district as part of our representative form of government. Previous decisions have sought to give effect to this purpose. In this respect I do not believe "actually domiciled" represents a substantial change from previous jurisprudential determinations of "actual resident", as required by La.Const., 1921, Art. 3, § 9.[1]
In the present case I disagree that the evidence preponderates in favor of a conclusion that Hayes' contacts with the 96th district were not sufficient.
In my opinion Hayes did not lose his domicile when he rented the apartment on Ursulines Street in 1971 (which two other people also "used"). And the Louisiana Avenue apartment was apparently a continuation of whatever "pad" arrangements he had on Ursulines Street. I therefore conclude it was unnecessary for Hayes to reestablish a domicile on North Robertson Street, either after he "changed apartments" from the temporary apartment on Ursulines (to which the contestant also had a key) or after he gave up the temporary apartment on Louisiana to go to Alabama in connection with his activities on behalf of the National Tenants Organization.
*922 Hayes' 1971 move into the Ursulines apartment merely involved a transfer of some of his clothing; he had no furniture except two stereo phonographs which he left at Robertson Street. He continued his same daily pattern of eating lunch and dinner with his mother. He continued the same daily contacts with the district in civic, social and political activities. His only change was to sleep perhaps most of his nights away from Robertson Street. The same life style apparently continued with the move to Louisiana Avenue, where he stayed only 12 or 13 months.
Hayes' intention to maintain his domicile at Robertson Street is borne out by considerable evidence.[2] The only difficult determination is whether he maintained sufficient contacts there so that the Robertson Street residence qualified as a principal establishment within the contemplation of C.C. art. 38.
While much of Hayes' evidence was unsatisfactory and apparently rejected, the credible evidence in my opinion does not preponderate in favor of a conclusion that Robertson Street was not Hayes' principal establishment, and the challenge to his qualifications should be dismissed.
GULOTTA, Judge (dissenting).
Plaintiff has the burden of showing by positive and satisfactory proof[1] that Hayes changed his domicile from the 96th District and that he has not been "actually domiciled" in the legislative district for a year preceding the date he seeks to qualify as a candidate for the legislature from that district.
We are confronted with the legal question of the sufficiency of evidence offered by plaintiff that defendant actually changed his domicile. My evaluation of the testimony is that plaintiff succeeded in showing only that the 40 year old unmarried Hayes had a residence outside of the 96th District in addition to his actual domicile with his mother within the district. Hayes has been continuously registered as a voter in the 96th District since September, 1968, and has consistently voted there. He was elected to the Human Relations Committee from the 96th District in 1972 and unsuccessfully sought election from the same district on August 17, 1974. On a resident fishing license which he obtained on July 2, 1974, Hayes gave his address as 936 N. Robertson, within the legislative district. His driver's license, which he obtained on July 10, 1974, also indicated defendant's address as 936 N. Robertson.
Hayes testified that he lived with his mother at 936 N. Robertson Street in August, 1974 and at 1013 N. Robertson Street in August, 1975. Defendant testified that he had an apartment on Ursulines Street (within the district) up to July, 1973, after which he obtained the apartment on Louisiana
*923 Avenue (outside the district.) Hayes does not deny that he had the Louisiana Avenue apartment under lease during the summer of 1974 and that he was visited from time to time by friends and acquaintances, including witness Castano. He stated, nevertheless, that he continued to maintain his actual domicile with his mother in the district.
Mrs. Elva Hayes, defendant's mother, corroborated defendant's testimony that he lived with her at 936 N. Robertson Street. She testified that defendant had meals with her at her home, slept three, four or five nights a week at her home but that he spent weekends away. She further testified that she knew her son had apartments on Ursulines Street and on Louisiana Avenue. Ruth Queen, a neighbor of Mrs. Hayes on N. Robertson Street also testified that Hayes lived with his mother in the 96th District.
It is apparent from the foregoing that Hayes has maintained his actual domicile within the district from 1968 up until and including the time that he qualified as a candidate for the House of Representatives in August, 1974. It is clear also that while he maintained his actual domicile with his mother at the two N. Robertson Street addresses, he nevertheless had resident apartments on Ursulines Street (within the district) and on Louisiana Avenue (outside the district.)
The evidence, on the other hand, relied on by plaintiff to seek disqualification of Hayes, is insufficient. Castano testified that Hayes resided at 617 Ursulines Street within the district until the summer of 1973, and that defendant moved to the Louisiana Avenue address where he lived until the latter part of August, 1974. Castano stated that he had not visited Hayes on N. Robertson Street but that he had visited Hayes at the Louisiana Avenue address. Castano further testified that he had no knowledge that Hayes lived at the N. Robertson Street addresses.
Eric Coleman, an employee of plaintiff Charbonnet, stated that he had spent nights at the 936 N. Robertson Street address and that Hayes did not stay overnight on the occasions that Coleman did. He testified, however, that he saw Hayes at the N. Robertson Street address and that Hayes had taken some meals there. Ronald Chisolm testified that he had not stayed an entire night at N. Robertson Street but that he had spent overnight with Hayes at the Louisiana Avenue address. He, however, testified that Hayes lived with his mother.
In the final analysis, plaintiff has failed to produce sufficient evidence to disqualify defendant Hayes on the grounds that he is not actually domiciled within the 96th District.
Absent strong and convincing evidence of a candidate's disqualification to seek office, courts should be reluctant to invade the elective process. Selection of candidates for office, if at all possible, must be left to the people and selection by judicial fiat should be zealously avoided. Under the circumstances in the instant case, I would not disqualify candidate Hayes from seeking election to the legislature from the 96th District. Accordingly, I dissent.
NOTES
[1] We are informed that the official document contains the word "preceding".
[1] It is indeed arguable that use of the word "domiciled" indicates a greater emphasis on intention, which is not the significant consideration when residence is the criteria.
[2] He did not change his voter registration from 1013 Robertson when he ran for the Human Relations Committee (although he then had the apartment on Ursulines Street in the same election district), but did change in connection with the family's move to 936 Robertson in May, 1974 (at approximately the same point in time he informed the Louisiana Avenue landlord he was giving up the apartment at the end of September). He did, however, change the registration back to 1013 when he returned from Alabama.

Other supportive evidence was his 1974 driver's license (changed to 936 from 1013 which showed on the 1972 license, obtained after he rented the Ursulines Street apartment); his fishing license; and a record (showing a Robertson Street address) of an arrest in connection with a tenants' strike.
[1] In re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1951), the Louisiana Supreme Court stated that a party seeking to show a change of domicile must overcome the presumption that it has not been changed by positive and satisfactory proof. In Succession of McElwee, 276 So.2d 391 (La.App., 2nd Cir. 1973), the 2nd Circuit postulated the rule that the burden is upon a party endeavoring to avail himself of a change in domicile to prove the change beyond a reasonable doubt. See also Succession of Simmons, 109 La. 1095, 34 So. 101 (1903).