SAMUEL, Judge.
On June 19, 1975 plaintiff filed this suit against his wife, for separation from bed and board in the Twenty-fifth Judicial District Court for the Parish of Plaque-mines. On July 30, 1975 he filed a supplemental petition seeking a divorce on the ground of continuous living separate and apart for more than two years. On June 25, 1975 Mrs. Slater filed a separation suit (also later converted into a divorce action) against her husband in the Twenty-fourth Judicial District Court for the Parish of Jefferson. Thereafter, in this suit Mrs. Slater filed exceptions to the jurisdiction and venue of the Twenty-fifth Judicial District Court. She also filed an exception of lis pendens. Mr. Slater then filed a rule for custody of their minor child.
After hearing the exceptions and the rule, judgments were rendered by the Twenty-fifth Judicial District Court overruling the exceptions and awarding custody of the minor child to Mr. Slater. Mrs. Slater appealed from the judgment awarding custody and applied for writs from the judgment overruling the exceptions. Ultimately the writ application was granted.[1] and the matter is now before us on both the appeal and the writs.
In this court, counsel for appellant and relator argues only the questions of venue and custody; he does not contest the judgment as it relates to lis pendens. Thus, the issues presented are: (1) whether Mr. Slater was domiciled in the Parish of Pla-quemines, thus giving the Twenty-fifth Judicial District Court venue in this suit; and (2) if so, whether the trial court erred in awarding the custody of the minor child to the father. Because our conclusion on the first issue is that Mr. Slater was not domiciled in. Plaquemines Parish, so that the Twenty-fifth Judicial District Court for the Parish of Plaquemines was a court *618 of improper venue without authority to hear the matter, we do not consider the second issue.
The basic controlling law is to be found in the following codal articles:
“An action for an annulment of marriage, for a separation from bed and board, or for a divorce shall be brought in a parish where either party is domiciled, or in the parish of the last matrimonial domicile.
The venue provided in this article may not be waived, and a judgment rendered in any of these actions by a court of improper venue is an absolute nullity.” LSA-C.C.P. Art. 3941.
“The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, <and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.” LSA-C.C. Art. 38
“A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one’s principal establishment there.” LSA-C.C. Art. 41.
“In case this declaration [recorded declaration of intent to change domicile] is not made, the' proof of this intention shall depend upon circumstances.” LSA-C.C. Art. 43.
We summarize Mr. Slater’s testimony relative to domicile in the next four paragraphs.
He is in the offshore marine business and has a number of different residences. At the present time he lives at 3000 St. Charles Avenue, New Orleans, where he has resided since January, 1975. He has a home in Aspen, Colorado, a yacht harbored in New Orleans, and a family home located in Timberlane, which is in Jefferson Parish. He resided continuously in the Timberlane home from 1966 until 1971 or 1972 and from November 22, 1974 to December, 1974 recovering from an appendectomy. During part of 1974, he lived in an apartment in a New Orleans marina, moving from there in December, 1974 or January, 1975 to the St. Charles Avenue apartment.
On December 21, 1974 he vacationed in Aspen with his wife and his children for approximately two weeks returning to New Orleans about January 3, 1975 and going directly to his rented apartment on St. Charles Avenue in New Orleans.
He considers his mother’s home in Belle Chasse in Plaquemines Parish his domicile. He has a separate bedroom in her two-bedroom house and keeps some of his clothes there, although he also has clothes at about fifteen different places all over the world. When asked how often he goes to Belle Chasse, he said there is no get time, it would just depend on his schedule and sometimes it would be more frequently than others. When asked if he had filed a declaration of intent to change his domicile within the last five years, he answered in the negative.
Mr. Slater was born in Plaquemines Parish. He married Mrs. Slater in 1950 and actually resided in Plaquemines Parish for approximately the following eight to ten years. After leaving Plaquemines Parish the couple moved to Orleans Parish and from there to Jefferson Parish. He registered to vote in Plaquemines Parish in 1953 and has never changed his voter registration. His passport issued in 1973 lists his address as Belle Chasse. The motor vehicle registration of his two cars lists his address as Belle Chasse, Louisiana. His boat is registered with the Belle Chasse address. He pays personal property taxes in *619 Plaquemines Parish and has done so over the years. He maintains an occupational license from the Parish of Plaquemines in connection with his business, although his two offices are in New Orleans and Brazil. He has apartments in Holland, Brazil, Pascagoula, Mississippi, a home in Colorado, two suites at the French Quarter Inn, New Orleans, and an apartment on St. Charles Avenue in New Orleans. He also lives on his yacht in various parts of the world. He has never intended to change his permanent fixed address and domicile in Plaquemines Parish nor does he intend to so do when he moves to Bamboo Road, New Orleans, where he has a twenty year lease on a home owned by his son and where he intends to reside with his children when renovations are complete.
On cross examination, plaintiff identified income tax returns for the years 1970 through 1974 made in the names of himself and his wife, which listed his address as Colony Road [Timberlane], Gretna, Louisiana. Mr. Slater stated this resulted from Mrs. Slater’s refusal to sign the form listing their address as Plaquemines Parish, causing them to get into trouble with the Internal Revenue Service.
Mrs. Slater testified: Following their marriage in 1950 they lived with Mr. Slater’s mother in Plaquemines Parish until 1951 and then moved to the Parkchester Apartments in New Orleans where they lived until 1952. They then moved to Port Sulphur in Plaquemines Parish and resided there until 1960, at which time they moved to MacArthur Boulevard in New Orleans. They lived on MacArthur until they built the home in Timberlane in 1967 where they lived until he moved to New Orleans in the French Quarter Inn in 1971. He returned off and on to the Timberlane residence until 1974 when he moved to an apartment on St. Charles Avenue, New Orleans. She voted in Plaquemines Parish because her husband would not let her change her registration for business reaso'ns.
This court states in Charbonnet v. Hayes, La.App., 318 So.2d 917, 919:
“Our courts have frequently interpreted the meaning of the word ‘domicile’. We refer to a number of cases in which the ‘domicile’ or ‘principal establishment’ has been jurisprudentially restated to be ‘the principal- domestic establishment’. This is based upon where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and the comforts of domestic life. In establishing domicile, intent is based on actual state of facts and not what one declares them to be.” [citations omitted],
The record establishes to our satisfaction thaf when the Slaters moved from Port Sulphur to MacArthur Boulevard in New Orleans in 1960, they effectively changed their domicile to Orleans Parish. And when Mr. Slater built his family home in Timberlane in Jefferson Parish, moved there with his family in 1967 and lived there with his family until 1971 or 1974, he effectively changed his domicile to the Parish of Jefferson. The record further establishes that thereafter his domicile was in the City of New Orleans.
The facts that Mr. Slater was and is registered to vote in Plaquemines Parish, his passport, motor vehicle and boat registration list his address as Belle Chasse, he pays personal property taxes in Plaquem-ines Parish, and maintains an occupational license from Plaquemines Parish are not controlling on the question of domicile. They appear to be mainly for business purposes and, insofar as the question of domicile is concerned, are important only as they may relate to an intention to make an actual residence a domicile. Here the record contains no acceptable evidence of any such actual residence by Mr. Slater in his mother’s Plaquemines Parish home. As stated in Charbonnet v. Hayes, intent is *620 based on actual facts and not on what one declares them to be.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, Idabelle Cloutman, wife of Charles Darwin Slater, and against the plaintiff, Charles Darwin Slater, maintaining defendant’s exception to the venue and dismissing plaintiff’s suit.

Reversed.

LEMMON, J., concurs with written reasons.

. No appeal was taken from the judgment overruling the jurisdiction and venue exceptions allegedly because such a judgment has been held to be interlocutory and not ap-pealable. The application for writs on those issues was denied by this court but a subsequent application to the Supreme Court was granted. That court remanded the case to this court so that the venue question could be heard together with the custody matter. See “Charles Darwin Slater v Idabelle Cloutmom, wife of Charles Darwin Slater," No. 57,042 of the docket of the Supreme Court of Louisiana, writs granted November 5, 1975.