407 So.2d 1385 (1982)
Lynn J. TOMLINSON et al.
v.
Lee FRAZIER et al.
No. 13039.
Court of Appeal of Louisiana, Fourth Circuit.
January 5, 1982.
Dissenting Opinions January 7, 1982.
Dissenting Opinion January 8, 1982.
Writ Denied January 8, 1982.
*1386 John Musser, IV, Harry A. Rosenberg, New Orleans, for plaintiffs-appellants.
Kenneth M. Carter, Herman & Herman, New Orleans, for defendants-appellees.
Before SAMUEL, C. J., and REDMANN, GULOTTA, BOUTALL, SCHOTT, GARRISON, CHEHARDY, BARRY, KLIEBERT, KLEES, AUGUSTINE, CIACCIO, LOBRANO, WARD and WILLIAMS, JJ.
In order to comply with the requirement of La.R.S. 18:1409F that we render judgment in this election candidacy case within 24 hours after the case is argued, we postpone assignment of reasons but now decree that
The judgment appealed from is affirmed.
BYRNES, J., recused.

Reasons for Judgment
REDMANN, Judge.
Plaintiffs appeal from the dismissal of their suit contesting defendant's candidacy for the Louisiana House of Representatives. We affirm the judgment appealed from, and we adopt the reasons of the trial judge, although we add to them because of the argument made in this court. Judge Plotkin's reasons are quoted:
"Plaintiffs, Lynn J. Tomlinson, Evelyn Booker and John Geiser, III, bring this action against defendant Lee Frazier challenging his eligibility as a candidate for State Representative from the 92nd Legislative District. This attack is based on their contention that defendant failed to comply with the requirements for residence and domicile set forth in Art. 3 Section 4(A) of the Louisiana Constitution of 1974, which provides:
(A) Age; Residence; Domicile. An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
They allege that at the time defendant filed his qualifying papers he had neither resided in the State for the preceding two years nor been actually domiciled in the 92nd Legislative District for the previous year.
"Plaintiffs have the burden of proving by positive and satisfactory proof that the defendant failed to meet the requisites for candidacy outlined in Art. 3 Section 4(A). Mix v. Blanchard, 318 So.2d 125, 129 (La.App. 4th Cir. 1975). Plaintiffs, however, have failed to carry the burden of proof required to disqualify the defendant as a candidate.
"On August 26, 1969, defendant and his wife purchased the property located at 329 Diana Street in the Algiers Section of New Orleans, Louisiana, where they resided until 1974 when defendant was appointed executive director of Charity Hospital. As director of Charity Hospital, defendant was entitled to, and did occupy, rent-free, 266 Walnut Street, New Orleans, Louisiana until that employment was terminated in June 1977. Defendant then assumed the directorship of Harlem General Hospital in New York City, where he relocated and resided from January 1, 1977 until May 1980 when he was offered the position as director, New Orleans General Hospital, which he accepted.
"During the summer of 1980, defendant periodically returned to New Orleans to prepare for the opening of the hospital and to arrange housing for his family. On October 30, 1980, he executed an agreement to purchase 1004 Philip Street, New Orleans, Louisiana, scheduling the act of sale and the date of occupancy for December 3, 1980. However, due to the seller's inability to vacate the premises on the scheduled date, the act of sale was extended until December 14, 1980. The act of sale ultimately passed on December 19, 1980 and defendant and his family have continuously resided there.
"Plaintiffs contend that defendant changed his domicile when he moved to New York City. Thus since he did not physically occupy 1004 Philip Street until December 16, 1980, a period less than one year from the date he actually qualified for office, defendant was not domiciled in the 92nd Judicial District one full year prior to qualifying.
"The Fourth Circuit Court of Appeal in construing the intent and purpose of the *1387 redactors in drafting Art. 3, Section 4(A) stated that:
The framers of our present constitution intended to ensure that a candidate seeking to represent the people of a district does truly live amongst those people and does not simply establish a domicile by declaration of intentions accompanied by some minimum acts of residence. As we see it, the constitution requires adherence to the factual concept of habitual residence and principal establishment, and, where a person resides alternately in several places, he is only qualified for election purposes in that place where he maintains bona fide living quarters in which he actually lives a substantial part of the time. It emphasizes the facts of living in a place, rather than simply maintaining a bedroom elsewhere which one may occasionally retire to. The determination of actual domicile is dependent on the facts in each particular case. The burden of proof is upon the contestant. Charbonnet v. Hayes, 318 So.2d 917, 920 (La.App. 4th Cir. 1975).
"The Court had the opportunity to comment further on the intent and purpose of the redactors in drafting this Article in Mix v. Blanchard, supra., where it stated:
It is apparent the delegates intended to limit candidacy for political office to citizens who actually live in the district they aspire to represent. The newly drafted constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area, and were not truly representative of the district from which they sought election. Id. at 127-28.
"The evidence clearly establishes that defendant was actually domiciled within the 92nd Legislative District for the entire year preceding his qualifying as a candidate. The facts show that the definition of domicile as articulated by the delegates to the Constitutional Convention who drafted Art. 3, Section 4 has been met.
"Defendant became a fulltime employee of New Orleans General Hospital in September 1980, and was responsible for its public opening on December 15, 1980. Although he had to return periodically to New York to conclude his business affairs and to arrange for his family to move to New Orleans, defendant spent his nights at the hospital or the Pontchartrain Hotel until he was able to secure a permanent home. On these occasions he actually lived in the district.
"Defendant's family and physical possessions arrived in New Orleans on or about December 13, 1980. He paid the vendor a $250.00 rental fee for the use of 1004 Philip Street for the period December 14, 1980 to December 19, 1980, giving him exclusive and constructive control over the property until the act of sale. As of December 14, 1980, defendant was actually domiciled within the 92nd Legislative District.
"Plaintiffs also argue that defendant did not reside in the state for the two years preceding his qualifying as a candidate.
"It is well settled under Louisiana law that while a person may have only one domicile he may maintain two or more residences at the same time. Charbonnet v. Hayes, supra; La Fleur v. Seaboard Fire and Marine Insurance Co., 296 So.2d 860, 863 (La.App. 3rd Cir. 1974). Although the two terms are closely related they are not synonymous. La Fleur at 863.
"From the date defendant moved to New York until the date he established his domicile in the 92nd Legislative District he had two places of residence, one in New Orleans at 329 Diana Street and the other in New York City.
"As the Court stated in Stavis v. Engler, 202 So.2d 672 (La.App. 4th Cir. 1967), the issue of residence depends on the resident's intent.
* * * One does not, however, lose his status, as an actual, bona fide, resident of a place, either because he finds it necessary to establish his family elsewhere, or because, in the absence of his family, he does not maintain a domestic establishment at such place. The question is one largely of intention, and the intention of a person, in that respect, is determined by his expressions thereof, at times not suspicious, and his testimony, when called on, considered in connection with his conduct and the circumstances of his life.

*1388 Id. at 677, quoting Caufield v. Cravens, 138 La. 283, 70 So. 226, 227 (1915).
"The facts indicate that defendant always intended to maintain his residence at 329 Diana Street while he resided in New York City. During this period, he periodically returned to New Orleans and stayed at the Diana Street address. Over this period of time he maintained the property and paid the monthly mortgage, taxes, water bill and insurance premiums. This evidence unequivocally shows that defendant intended to reside in New York temporarily solely because of the job opportunity at Harlem General Hospital. It was the defendant's intention to return to New Orleans within a definite period of time after completing his employment contract.
"It is a well established principle in our jurisprudence `that laws governing the conduct of elections should be liberally interpreted so as to promote rather than defeat candidacy.' Slocum v. DeWitt, 374 So.2d 755, 758 (La.App. 3rd Cir. 1979). Moreover, `any doubt should be resolved in favor of permitting a candidate to run for public office. After all, he still has to face the voters who will, and should, exercise the final judgment on his candidacy.' Id."

We add to those reasons in respect to both the two-year "resided" requirement and the one-year "actually domiciled" requirement of La.Const. art. 3 § 4(A).
We first repeat, for emphasis, the difference in that constitutional language in stating the eligibility requirements: one need only have "resided" in the state for two years but must have been "actually domiciled" in the legislative district for one year preceding "the time of qualification." The constitutional convention delegates heard the chairman of the committee which presented the draft of Section 4 explain "It is our appreciation that the word `domicile' is in fact a more restrictive word than is the word `residence.' By that I mean that you can have but one domicile but you can have more than one residence." Records, La. Constitutional Convention 1973, V, 328. He later declared "I don't think anything inhibits an individual from having three, four, six, eight, ten or fifteen residences." Id., 330.
We next observe that defendant has lived in Louisiana since he was three months old and is thus virtually a life-long resident of Louisiana. He at no time had any other residence except during the period of about two and a half years that he worked in New York. The determinative question, however, is not whether he had a residence in New York, but whether he abandoned or somehow forfeited his life-long residence in Louisiana.
Most of the relevant circumstances are set forth in the trial judge's reasons, although we would add that defendant continued to contribute to his church near his Diana Street house in New Orleans at all times, and appellants stress that, in addition to moving into New York City proper (he first rented nearby) because an ordinance required him to do so to keep his city employment, defendant (and his wife) also registered to vote in New York, and we find no express testimony that the ordinance required defendant to do that. But when plaintiffs' counsel later asked about changing voter registration, the trial judge halted the inquiry with "Let's not go through that. He's claiming it was a job opportunity such as a student going off to school or a soldier going into the army." It is not clear to us, from our reading of the transcript, that the New York ordinance required voter registration as a qualification for the New York city hospital employment, but the trial judge may have made that inference and plaintiffs may have acceded to that inference, for they offered no further evidence on the registration, not even by proffer under C.C.P. 1636. Furthermore, defendant evidently did not attach to voter registration the significance that plaintiffs would, for he had even changed his registration in New Orleans when he moved from the Diana Street house he owned into the Walnut Street house provided for him as director of Charity Hospital. He cannot have supposed that that directorship was anything but a temporary job (and he so testified), and therefore he cannot have expected to live in that house indefinitely, yet he changed voter registration to that house's location. Thus a change in voter registration for him seems to be not a momentous matter, and certainly not a matter that precluded defendant's continuing to be a resident of Louisiana.
Plaintiffs also stress defendant's wife's "No" response to "You didn't intend to be living on Diana street or Walnut street at the same time you were living in New York *1389 City, did you?" But the wife's testimony cannot be misunderstood in context: she was only denying any intent to be in two places at once and that is all plaintiffs' counsel was talking about. "Q. You didn't have any intention to live on Diana street while you were living on Walnut street? A. You mean live in two places? Q. Right. A. I don't think that's possible, no."
From the record as a whole, we cannot say that the trial judge was clearly wrong in his conclusion that defendant neither abandoned nor lost his life-long Louisiana residence by his stay in New York, when, as he testified, he always intended to return to Louisiana. Accordingly the requirement of two years' residence in the state was correctly held met.
The one year "actually domiciled" requirement was also correctly held met from the facts that defendant since October 30 had a contract to buy the house at 1004 Philip street, paid rent for it for December 14-19, had the keys to it and had at least set foot in it, all elements concurring as of December 14, 1980 (although he probably did not sleep there that night), one year before the day he qualified.
But we also observe that the constitutional wording in art. 3 § 4(A) is "at the time of qualification," not at the time of his qualification. The committee draft had read "at the time of the general election," and the first amendment was to "time of qualification for the office." The amendment's proponent explained "it's going to require the legislature, of course, to set a specific date for qualifying so that all will be treated equallythat is you won't have an independent able to come in and register at a later date than the democratic primary or the republican primary ...." Records, V, 328. The convention thus intended to treat all persons equally in respect to their eligibility by measuring age, residence and domicile by the same standard for all candidates, as of "the time of qualification for the office."[1] Because periods of residence and domicile were made requirements for eligibility to office, it would have made no sense to require a democrat or a republican to meet those requirements at the time of his qualification when his qualification had to occur before his party's two partisan primaries, months before an independent would have had to qualify by nomination papers, and thus months before "his" (the *1390 latter's) qualification. The result would have been that a democrat or republican would have a months-longer residence requirement for eligibility to office, which simply cannot have been the intent of a constitutional convention composed almost entirely of democrats and republicans. Similarly, if two candidates had each become domiciled in a district on December 16, 1980, and the "time of qualification as a candidate" set by the legislature was December 14 through 18, 1981; and the purpose of requiring one year's "actual domicile" in the district for eligibility is to assure that the candidate has that much familiarity with the district's problems; then it would make little sense to accept one candidate because he filed his qualifying papers on December 18, yet disqualify the other because he filed his on December 14. That would be an absurd result, and therefore must be avoided in constitutional interpretation. Blessing v. Levy, 214 La. 856, 39 So.2d 84 (1949); State v. Joseph, 143 La. 428, 78 So. 663 (1918).
Plaintiffs did not bear the burden of proving either that defendant did not reside in Louisiana for the two years or that he was not domiciled in the district for one year preceding the time of qualification.
GULOTTA, CHEHARDY and KLIEBERT, JJ., concur.
SAMUEL, C. J., and WILLIAMS, J., dissent.
GULOTTA, Judge, concurring.
I respectfully concur.
The most serious attack on Frazier's qualifications is based on the two-year residency requirement. In Charbonnet v. Hayes, 318 So.2d 917 (La.App. 4th Cir. 1975), we stated that the contestant has the burden of showing the opposing candidate has not met this requirement.
For the reasons set forth in the trial judge's opinion and those stated by the majority, I conclude that plaintiffs have failed to carry their burden. The evidence and argument offered regarding lack of residence in Louisiana by Frazier for this period, though serious, was not convincing enough to compel a result that Frazier should be disqualified. As I stated in a dissent in the Charbonnet case, supra:
"Absent strong and convincing evidence of a candidate's disqualification to seek office, courts should be reluctant to invade the elective process. Selection of candidates for office, if at all possible, must be left to the people and selection by judicial fiat should be zealously avoided. Under the circumstances in the instant case, I would not disqualify Hayes from seeking election to the legislature from the 96th District."
KLIEBERT, Judge, concurring.
I concur in the affirmation of the trial judge's ruling but do not agree with the reasons for the affirmation assigned by the majority decision.
SAMUEL, Judge, dissenting.
I agree with the dissenting opinion handed down by Judge Williams.
Relative to the two year residency requirement, the basic question is whether Mr. Frazier retained the Diana Street property as his residence and, in my view, the evidence firmly establishes he did not. Nor do I see any materiality in that his work required that he live in New York or that his mother occupied the Diana Street premises, facts relied on by the appellee. Whether or not his work requirement resulted in losing his Louisiana residency is immaterial; he did, in fact, lose it. And I see no difference between his mother occupying the premises as opposed to Mr. Frazier leasing those premises to a third party on a month-to-month basis.
In addition, I am satisfied that, as required by Article 3, § 4(A) of our 1974 Constitution, "at the time of qualification as a candidate" Mr. Frazier had not been "actually domiciled" for the preceding year in the legislative district here involved. Accepting all the pertinent facts as found by the trial court, he was not domiciled in the legislative district for the preceding year at the time he actually qualified; he was so domiciled for the required one year period only if the "time of qualification" is considered as being the final day on which he could qualify. The trial court, and apparently the majority of this court, accepted the latter. I believe this is incorrect. The determining time is when the candidate himself actually qualifies.
It is noteworthy that the word "qualification" is used only twice in Article 3, § 4, under (A) simply, without modification, "qualification", but under (B) modified by the personal, possessive pronoun "his", "his *1391 qualification". In my view, "his qualification" has reference solely to the time the candidate himself actually qualifies, and there is no reason to hold the word "qualification" has a different meaning in (A) as opposed to its clear meaning in (B). An examination of the records of the Constitutional Convention which framed the Louisiana Constitution of 1974 establishes this view as correct. The following colloquy appears in Records of the Louisiana Constitutional Convention of 1973: Journal of Proceedings, Volume 9, page 2509:

Questions
"Mr. Dennery Mr. Chairman, I suppose this should be asked of Judge Tate.
It's clear from this, Justice Tate, that the date of qualification is the final date at which a man can qualify ... not the date of his actual qualification?

Mr. Tate Mr. Dennery, we thought it was clear, we needed some clarification because... we thought it was clear that it meant at the time that he qualifies as a candidate for office, he meets the qualifications needed for the office.

Mr. Dennery No. My question is, sir: do you mean at the actual date on which he personally qualifies or the last date on which he is permitted to qualify?

Mr. Tate I understand your question. We didn't think that was a problem because if he didn't have it the first day, he would qualify on the last date, Mr. Dennery. We didn't think it was a real problem."
Nor can I agree with the majority opinion which states "it would make little sense to accept one candidate because he filed his qualifying papers on December 18, yet disqualify the other because he filed his on December 14." This, it appears to me, is exactly what the Constitution says and I have no authority to hold otherwise simply on the basis of what I may consider to be a better result.
The important consideration is what the convention delegates understood they were voting on and what, by that vote, they accepted. And, quite clearly, it appears to me that they voted on and accepted the fact that "time of qualification" meant only the time when the candidate himself actually qualified.
Accordingly, I respectfully dissent.
WILLIAMS, Judge, dissenting.
The evidence establishes that Mr. Frazier did not maintain a residence in Louisiana for the two years prior to his qualification as a candidate. See 1974 Louisiana Constitution Article 3, § 4(A).
Testimony adduced at trial shows that both Frazier and his wife registered to vote in New York, established a home there, maintained their principal banking accounts in New York, paid taxes in New York, and received mail in New York.
In light of Frazier's extensive contacts with New York, his intention clearly appears to have been to establish residency there. It is equally clear that Frazier also abandoned any intention of keeping 329 Diana Street as a residence.[1] Frazier's only interest beyond ownership in that address was his mother's residence there and a few sporadic visits. Testimony indicated that the Frazier family could not physically reside in the home because of space limitations, and Frazier himself did not always stay there on his trips from New York to New Orleans. When Frazier's family returned to New Orleans, they did not stay on Diana Street but stayed in the Pontchartrain Hotel until they could move into another residence. Simply because a family member remains at a house after the owner has moved is not unequivocable evidence that the intention of the owner was for that family member to maintain the house as the owner's residence.
Furthermore, all of the evidence introduced by Frazier to support his claim of residency at Diana Street is indicative merely of ownership, and not necessarily of residency. Payments on a mortgage note, maintenance of insurance, payment of water bills, taxes, and other maintenance expenses are not necessarily limited to residency. Mrs. Frazier testified that she had filled out "change of address" forms at the post office, indicating that any mail addressed to the family should be forwarded to New York. Any mail received at the Diana Street house, therefore, probably was of an incidental nature.
In McIntire v. Carpenter, 202 So.2d 297 (La.App. 4th Cir. 1967), this court addressed the question of residency of the plaintiff, a doctor who had a medical office in Jefferson Parish and was claiming residency in *1392 that parish. The plaintiff had a Jefferson Parish driver's license, a bank account in the parish, was a member of professional associations in the parish, was registered to vote in that parish, and was a Notary Public for Jefferson Parish. He testified that he spent one or two nights a week in his office, and the remaining nights at his home in Orleans Parish. This court found him not to be a resident of Jefferson Parish, holding:
"(W)e are compelled to reach the inevitable conclusion that an occasional night spent in his medical office is not of such import so as to constitute that office as his residence and thus provide him with the necessary residency requirements of a candidate for State Senator." Id. at 300.
See Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921); see also Succession of Rhea, 227 La. 214, 78 So.2d 838 (1955). The evidence available for our review in the present case presents an even weaker case for a determination of residence than in McIntire, supra. See Carrere v. Castano, La.App., 395 So.2d 949.
The majority decision effectively operates as a judicial amendment of Article 3, § 4(A) of the Louisiana Constitution of 1974, by completely striking the Louisiana residency requirements contained therein and substituting a less stringent requirement of mere property ownership in the State. In an area of the law already fraught with inconsistency and a lack of any definite standards, this decision only further complicates the issue and provides no direction for the future.
I respectfully dissent.
SAMUEL, Judge, dissenting.
In compliance with the requirement that we render judgment within twenty-four hours after argument in election contests and challenges (LSA-R.S. 18:1409 F), the following final paragraphs were inadvertently omitted from my dissent. I add them now as part of that dissent:
"Finally, LSA-R.S. 18:451, a statute enacted after the adoption of the 1974 Constitution and effective January 1, 1978, must be considered. That statute reads, in full:
"A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office." LSA-R.S. 18:451. [Emphasis mine].
The quoted statute clearly and unequivocally requires that a candidate possess the qualifications for the office at the time he himself qualifies. This is in direct conflict with the action of the majority. Nor does the wording "Except as otherwise provided by law" make any difference here. As a constitutional matter the action of the majority effectively prevents the valid passage of any law which conflicts with that action.
In the absence of a holding of unconstitutionality, courts are required to follow the laws enacted by the legislature. Here, LSA-R.S. 18:451 has not been held unconstitutional; the question of whether or not that statute is unconstitutional has not been raised by the appellee, nor has it been considered by this court. In my view, under these circumstances we are required to follow LSA-R.S. 18:451.
Accordingly, I respectfully dissent."
NOTES
[1] The staff of the committee on style and drafting changed that wording to "the time of qualification as a candidate," but did not direct attention to the change by footnote, as it did with other changes. Records, XIV-A, 81-82. Rule 50(2) of the convention, Records, IV, 397, prohibited any change in meaning by the style and drafting committee, so that it must be presumed that no such change was intended. The minutes of the style committee did not reflect any motion related to this change. Records, XIV-A, 11. The style committee's version of the article reached the floor of the convention in the form of four amendments that were considered at once. Curiously, although § 4(A) spoke of "time of qualification," § 4(B)'s special rules for post-reapportionment elections spoke twice of periods "preceding his qualification." This interchange occurred: "Mr. Dennery Mr. Chairman, I suppose this should be asked of Judge Tate. It's clear from this, Justice Tate, that the date of qualification is the final date at which a man can qualify ... not the date of his actual qualification? Mr. Tate Mr. Dennery, we thought it was clear, we needed some clarification because ... we thought it was clear that it meant at the time that he qualifies as a candidate for office, he meets the qualifications needed for the office. Mr. Dennery No. My question is, sir: do you mean at the actual date on which he personally qualifies or the last date on which he is permitted to qualify? Mr. Tate I understand your question. We didn't think that was a problem because if he didn't have it the first day, he would qualify on the last date, Mr. Dennery. We didn't think it was a real problem." Records, IX, 2509. As we read that interchange, it appears to us that Mr. Dennery was repeating the same concern earlier evidenced on the convention floor, that an independent should not be eligible with less residence merely because "his qualification" could come months later than the time of qualification of candidates who had to go through partisan primaries. And that is at least a fair reading of the words in § 4(A) "at the time of qualification as a candidate." But perhaps Justice Tate was speaking of the words in § 4(B) "preceding his qualification" (in the original draft, "preceding his election," a day uniform for all candidates), of which the most obvious reading would be the particular candidate's date of filing his qualifying papers, rather than the several days of the period for qualification.

We leave the decision of the meaning and legality of the words "preceding his qualification" to a case in which they apply, that is, a case in which a candidate does not have the requirements of § 4(A) and claims to have the lesser requirements of § 4(B) for residence in reapportionment-changed districts. This is not such a case.
[1] It is possible, of course, for a person to maintain more than one residence. Charbonnet v. Hayes, 318 So.2d 917 (La.App., 4th Cir. 1975). This situation is not one of those instances.