972 So.2d 1174 (2007)
SUCCESSION OF Jason BOLDS.
No. 42,459-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
Theus, Grisham, Davis & Leigh, LLP, by Paul Denton Spillers, Monroe, for Appellant William Jason Bolds, Sr.
Douglas Leon Stokes, Jr., Jonesboro, for Appellee John W. Bolds.
Before BROWN, STEWART and DREW, JJ.
DREW, J.
This is a sad family dispute wherein the sole issue for determination is whether *1175 the learned trial court was correct in ruling that Jason Bolds was domiciled in Bienville Parish as of the date of his death, April 28, 1998. We are constrained to reverse the ruling below.

FACTUAL AND PROCEDURAL BACKGROUND
On July 20, 2007, this matter was converted from a non-appealable interlocutory judgment to a writ application for which certiorari was granted. The matter was docketed for decision.
In the Second Judicial District Court, Bienville Parish, on October 26, 2005, William Jason Bolds, Sr., a resident of Winn Parish, filed a Petition for Notice of Application for Appointment of a Succession Representative for the estate of his father, Jason Bolds, who died on April 28, 1998. The petition alleged the decedent was domiciled in Bienville Parish when he died.
On January 9, 2006, John W. Bolds filed a petition to be appointed administrator of the succession of his father, the decedent. Among his allegations was that his father was domiciled in a nursing home in Bienville Parish when he died intestate. John asserted that his father owned no immovable property at the time of his death. An additional+allegation was that he and three siblings sued William and Scarletta J. Bolds in Jackson Parish (also in the Second JDC) seeking to set aside two allegedly forged cash sale deeds by which the decedent purportedly transferred two tracts of land to William.
William filed an objection to John's petition to be appointed administrator, asserting that John had a conflict of interest due to the Jackson Parish litigation. William offered as alternatives two other persons. On March 9, 2006, the trial judge named John the administrator and denied the opposition of William, who sought a new trial, which was ultimately denied on June 29, 2006.
Thereafter, on August 1, 2006, William filed a declinatory exception as to the court's lack of jurisdiction, based upon his contention that the decedent was never a domiciliary of Bienville Parish. In his memo supporting the exception, William contended that his deceased father was a domiciliary of Natchitoches Parish since 1985. The decedent was registered to vote there, obtained utilities there, banked there, and had a driver's license with that address. He was an active voter there until his health, deteriorated. After living with his son in Winn Parish from 1993 until 1995, the decedent began a series of moves to various nursing homes or hospitals in Jackson Parish, Winn Parish, Rapides Parish, and finally Bienville Parish. He visited his Natchitoches home when his health permitted and talked of returning home where the house was maintained for him by his son, although it was no longer in decedent's name. The decedent never executed an affidavit or declaration of domicile.
A quick chronology may be helpful here:
 John filed a petition to be appointed administrator;
 William objected, and the matter was tried;
 William lost, requested a new trial, and was denied relief again;
 Only then did William file his declinatory exception of lack of subject matter jurisdiction, to which John objected as untimely.
The record is silent as to a ruling on this technical issue of untimeliness, but we find that William's filing for initial relief did not waive his right to object on account of lack of subject matter jurisdiction. See La. C.C.P. art 925(C).
The trial court overruled John's exception to the court's lack of jurisdiction in a judgment signed November 14, 2006. *1176 William then filed an appeal from the unappealable interlocutory judgment. The procedural end result was this court's conversion of this dispute to a writ and docketing for decision.
William/Appellant's Argument
William asserts that both he and John simply made an error in their initial pleadings when they referred to Bienville Parish as the decedent's domicile. William contends that Natchitoches Parish was clearly established as their father's domicile, although he resided temporarily in nursing homes due to his declining health in his last years.
The appellant cites La. C.C.P. art. 2811, which states that a succession proceeding shall be brought in the district court of the parish where the deceased was domiciled at the time of his death. The venue requirement of La. C.C.P. art. 2811 may not be waived, even by an untimely declinatory exception. La. C.C.P. art. 44(c). An exception to jurisdiction over subject matter may not be waived. La. C.C.P. art. 925(C). In Succ. of McElwee, 276 So.2d 391 (La.App. 2d Cir.1973), the court cited the foregoing articles and held that in succession proceedings, venue is jurisdictional.
La. C.C. art. 38 defines domicile:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
La. C.C. art. 41 prescribes that a change of domicile occurs when one resides in another parish with the intention of making that his principal establishment. Absent filing a declaration of domicile in the mortgage records, proof of one's intention depends upon the circumstances. La. C.C. art. 43. The appellant cites various cases to support his arguments that:
 to change domicile, one must reside in another parish with intention to abandon the former domicile;
 the person seeking to establish a change of domicile has the burden of proof;
 there is a presumption against a change of domicile; and
 a person changing residence for health reasons does not indicate an intent to change domicile.
The appellant concludes by detailing the circumstances surrounding the decedent's various residences and all the factors indicating there was no intent to change his Natchitoches Parish domicile.
John/Appellee's Arguments
John states in brief that following the death of his father, he had a handwriting expert examine the deeds purporting to transfer the decedent's two tracts of immovable property to his brother William. The expert opined that the deeds were not executed by the decedent. Thereafter, John and three of his brothers filed suit in Jackson Parish against William and his wife seeking to have the deeds declared forgeries. The Bienville Parish succession action was filed when the trial court in Jackson Parish found their deceased father's succession to be an indispensable party there.
First, John asserts that William's declinatory exception of jurisdiction, was untimely. John maintains that William (the alleged forger) sought to have one of his own choices named as administrator of his *1177 father's succession in the Bienville Parish proceeding. When he was unsuccessful, he changed his mind and asserted that his father was, a Natchitoches Parish domiciliary at death. John relies on the doctrine of judicial estoppel to prevent "the perversion of the judicial process" and litigants "playing fast and loose with the courts." This argument has a great deal of appeal, but we find that it is not dispositive.[1]
Second, John asserts that the trial court factually determined that decedent was a Bienville Parish domiciliary at the time of his death with the result that the Bienville Parish court had jurisdiction. John argues that at his death his father had not lived in Natchitoches Parish for many years. In a somewhat contradictory argument, John urges it is undisputed that his father owned no immovable property in Natchitoches Parish, since the property had been transferred to William (in a transaction John is attacking as a forgery in the Jackson Parish litigation). According to John, his father slept, ate, established his household in Bienville, and surrounded himself with the comforts of domestic life and his family. The decedent had no home to which he could return in Natchitoches Parish without first obtaining the permission of William, who was record owner of the Natchitoches Parish property at the time of the father's death. Therefore, he concludes that the trial court was entirely correct in ruling that the decedent was domiciled in Bienville Parish at the time of his death.
Our Reasoning
The appellant has the better argument. If jurisdiction cannot be waived intentionally, it certainly cannot be waived carelessly and inadvertently. We feel that the learned trial court, quite understandably, gave too much weight to the domiciliary concessions in John's early filings. The totality of this sparse record, however, compels us to reverse the trial court findings as to domicile.
Clearly, Natchitoches Parish was the decedent's domicile for the last 13 years of his life, though his health and other needs required multiple and successive residences in his later years. The factual testimony did not come close to overcoming the presumption that Natchitoches was still the decedent's domicile at his death.
We are aggrieved that William wants it both ways, and that he has wasted the time of many public servants and other family members by not litigating his lack of subject matter claim first. Nonetheless, we are constrained to agree with William that this record does not reflect that the decedent ever changed his Natchitoches Parish domicile to Bienville or any other parish.
Accordingly, even though William's litigious actions don't pass the "sniff test," we take his counsel at his word, and reverse the ruling of the trial court on this exception, as we find that this bitter familial nightmare should be tried, if anywhere, in Natchitoches Parish, the domicile of the decedent as of the date of his death.
All court costs relative to the proceedings below are assessed against William, the party who now alleges that he made a mistake in initially seeking relief in Bienville Parish. All court costs as to this appeal are to be assessed 80% against William, and 20% against the other parties.

DECREE
The domicile of the decedent at death was Natchitoches. Accordingly, the ruling of the trial court to the contrary is REVERSED. *1178 Costs relative to the proceedings below are assessed against William; costs relative to this appeal are assessed 80% against William and 20% against the other parties.
STEWART, J., concurs in the result.
NOTES
[1] The inescapable question here, of course, is whether or not William would feel so strongly about domicile had he succeeded in his requests that the Bienville court appoint as administrator one of the people suggested by him, instead of his sibling John.